Newbury Township Board of Township Trustees, Appellant,

*v.* Lomak Petroleum (Ohio), Inc., Appellee,

[Cite as *Newbury Twp. Bd. of Trustees v. Lomak Petroleum (Ohio), Inc.* (1992), 62 Ohio St.3d 387.]

(No. 90–1709—Submitted October 15, 1991—Decided January 15, 1992.)

*David P. Joyce,* Prosecuting Attorney, and *Forrest W. Burt,* Assistant Prosecuting Attorney, for appellant.

*Vorys, Sater, Seymour & Pease, Duke W. Thomas, James C. Becker* and *John K. Keller,* for appellee.

*Wright & Logan* and *Paul L. Wright,* urging affirmance for *amicus curiae,* Ohio Farm Bureau Federation, Inc.

*Buckingham, Doolittle & Burroughs* and *William G. Williams,* urging affirmance for *amicus curiae,* MB Operating Co., Inc.

*Emens, Hurd, Kegler & Ritter, Thomas W. Hill* and *O. Judson Scheaf III,* urging affirmance for *amicus curiae,* Ohio Oil & Gas Association, Inc.

*Eugene P. Whetzel,* urging affirmance for *amicus curiae,* Ohio Manufacturers' Association.

*Johnson & Johnson, Nils P. Johnson, Jr.* and *Eric C. Johnson,* urging affirmance for *amici curiae,* Carter Resources, Inc., Everflow Eastern, Inc., and Viking Resources, Inc.

*Spieth, Bell, McCurdy & Newell, Timothy J. Grendell* and *John H. Forg,* urging affirmance for *amicus curiae,* Ohio Home Builders Association.

*Lee I. Fisher,* Attorney General, *Joan C. Weiser* and *Todd M. Musheff,* urging affirmance for *amicus curiae,* Ohio Department of Natural Resources.

ALICE ROBIE RESNICK, J.   The issue presented for our review is whether certain portions of Newbury Township's zoning resolution are invalid because they are preempted by R.C. Chapter 1509.

It is the public policy of the state of Ohio to encourage oil and gas production when the extraction of those resources can be accomplished without undue threat of harm to the health, safety and welfare of the citizens of Ohio. To further this policy and to ensure some degree of uniformity throughout the state, local regulation of some aspects of oil and gas well exploration and development is preempted by the statutory plan embodied in R.C. Chapter 1509. At the same time, the General Assembly had no desire to totally strip local governments, such as townships, of the power to regulate activities within their borders. R.C. Chapter 1509 attempts to strike a balance between those aspects of oil and gas well exploration and drilling which are reserved for state regulation and those areas which local governments, such as Newbury Township may permissibly regulate.

The basic scheme that sets forth the areas of regulation of oil and gas well drilling and exploration which are preempted by state law is found in R.C. 1509.39.[1] That statute begins by making it clear that local governments are not prevented from enacting and enforcing health and safety standards for the drilling and exploration of oil and gas, provided that they are not less restrictive than existing state requirements. The statute proceeds to list specifically those items and areas that counties and townships may not regulate; and concludes by prohibiting counties and townships from requiring a local permit to drill or operate wells in addition to the state-required permit. The statutory scheme embodied in R.C. 1509.39 guides our consideration of

---

1.  R.C. 1509.39 reads:

"Chapter 1509. of the Revised Code or rules promulgated thereunder shall not be construed to prevent any municipal corporation, county, or township from enacting and enforcing health and safety standards for the drilling and exploration for oil and gas, provided that such standards are not less restrictive than the provisions of this chapter or the rules adopted thereunder by the division of oil and gas, and provided further that no county, or township may adopt or enforce any ordinances, resolutions, rules, or requirements relative to the minimum acreage requirements for drilling units, and minimum distances from which a new well may be drilled or an existing well deepened, plugged back, or reopened to a source of supply different from the existing pool from boundaries of tracts, drilling units, other wells, and from streets, roads, highways, railroad tracks, or the restoration or plugging of an oil and gas well. No county, or township may require any permit or license for the drilling, operation, production, plugging, or abandonment of any oil or gas well, nor any fee, bond or other security, or insurance for any activity associated with the drilling, operation, production, plugging, or abandonment of a well, except for the permit provided for in section 4513.34 of the Revised Code, and any bond or other security associated therewith."

the validity of those parts of the Newbury Township Zoning Resolution at issue here.

Because the trial court granted Lomak's motion for summary judgment, we must review the decision in accord with the requirements of Civ.R. 56(C), *i.e.,* that "no genuine issue as to any material fact" exists. The grant of summary judgment will be affirmed only if it is apparent that "reasonable minds can come to but one conclusion" in favor of the moving party when the evidence is construed most strongly in the non-moving party's favor.

## I

Newbury Township Zoning Resolution Section 801.0 A reads: *"No person shall drill any oil or gas well,* nor erect, maintain or use a storage tank, separation tank, compressor station or temporary pit for the storage of saltwater and oil field waste, nor use any well for the purpose of storage or disposal of brine or other oil field materials, *in any residential district.* This prohibition is based on the stated zoning purposes and the type and character of permitted and conditional uses in such districts as they relate to the protection of the public health, safety, morals and welfare." (Emphasis added.)

Lomak argues that this section of the zoning resolution is not motivated by health and safety concerns, and is therefore preempted by R.C. Chapter 1509. Lomak further argues that the resolution functionally violates the restriction contained in R.C. 1509.39 that a township may not require its own permit to drill, in addition to the permit required by the state.

Newbury Township claims that Section 801.0 A is a valid health and safety regulation, and that no second permit in violation of R.C. 1509.39 is being required. Newbury Township points out that it is not attempting to totally prohibit drilling in the township; oil or gas wells can still be drilled in commercial- and industrial-zoned districts.

The court of appeals implied that this section of Newbury Township's resolution is an attempt to require a second permit in violation of the prohibition in R.C. 1509.39, and found that this resolution does not deal with health and safety matters.

R.C. 519.02 gives a local board of township trustees the authority to regulate land use within the township confines, and the power to divide the area into such districts or zones as the board determines are proper. While it is not generally the practice of courts to look into the appropriateness of local zoning decisions, *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 251, 197 N.E.2d 201, 204, we note from the drilling permits that,

even though the areas in Newbury Township in which Lomak desires to drill are zoned as residential districts, many of the areas are essentially not residential, but are primarily agricultural. However, the Newbury Township Zoning Resolution contains no districts designated as agricultural. All land in the township is zoned into three categories, *i.e.*, industrial, commercial, or residential.[2]

The drilling permits show that the areas in which Lomak wishes to drill are basically agricultural, and are of the type in which oil and gas well drillers such as Lomak would conduct operations. Therefore, in reality it appears that the effect of Section 801.0 A of the zoning resolution is to prohibit the drilling of oil and gas wells in a type of area usually considered to be most appropriate for such activity.

This section of the zoning resolution operates as if Newbury Township has declared oil and gas wells to be nuisances per se in all areas zoned residential within the township, without regard to the fact that some of the areas may be farmland. As in *Yorkavitz v. Columbia Twp. Bd. of Trustees* (1957), 166 Ohio St. 349, 2 O.O.2d 255, 142 N.E.2d 655, the township has attempted to prohibit that which the state encourages. Newbury Township does not appear to have taken into account local factors, such as population densities, in tailoring Section 801.0 A to meet the zoning needs of the township regarding oil and gas well drilling and exploration. Even though this section of the zoning resolution states that it is meant to protect the public health and safety, the broad sweep of the language actually exceeds a township's authority in "enacting and enforcing health and safety standards" and thus violates R.C. 1509.39.

We reiterate that we do not wish to require courts to evaluate every township zoning resolution to determine if it is appropriate in a case of this type. However, local courts are aware of population densities and special local conditions in townships within their jurisdictions. Those local courts are well equipped to make a determination whether a particular resolution is motivated by health and safety concerns, or is actually an attempt to prohibit, in the guise of a health and safety regulation, that which the state encourages.

R.C. 1509.39 preempts the power of a township to prohibit oil or gas well drilling in areas which are traditionally appropriate for such activity, unless health and safety standards are being adopted by the township zoning resolution. Because Section 801.0 A of the Newbury Township Zoning Reso-

---

2. Lomak makes no contention that Newbury Township exceeded its authority to zone by dividing the township into zoning districts in this way.

lution is not an attempt to further health and safety goals, we find that Section 801.0 A conflicts with, and therefore is preempted by, state law. See *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph two of the syllabus. We affirm the decision of the court of appeals on this issue.

We determine that this section of the zoning resolution is preempted by state law because it is not an attempt to regulate health and safety. Therefore, we decline to consider the second-permit issue discussed by the court of appeals. We believe that our analysis in this case comports with the balance sought to be achieved by R.C. 1509.39. Thus, a township may regulate oil and gas well site locations in a residential area in an appropriate situation, if the township's zoning actions are based on legitimate health and safety concerns.

## II

Newbury Township Zoning Resolution Section 801.0 B reads: *"No person shall drill any oil or gas well,* nor erect, maintain or use a storage tank, separation tank, compressor station or temporary pit for the storage of saltwater and oil field waste, nor use any well for the purpose of storage or disposal of brine or other oil field materials, *within 300 feet of any inhabited structure,* places of resort, assembly, education, entertainment, lodging, trade, manufacture, repair, storage, traffic, or occupancy by the public or other structures as defined in Ohio Administrative Code 1501:9–9–01(R); *nor within 200 feet of any street or highway,* public or private." (Emphasis added.)

### A

#### *"Street or highway" restriction*

The prohibition against drilling within two hundred feet of a street or highway, the final phrase of Section 801.0 B, is in direct conflict with R.C. 1509.39, which prohibits a township from adopting resolutions to regulate the minimum distances from oil or gas wells and "streets, roads, [or] highways." Because this part of Section 801.0 B of the zoning resolution violates an explicit statutory command of the General Assembly, it is clearly preempted, and is therefore invalid and unenforceable. Whether Newbury Township in adopting this phrase was motivated by health and safety concerns is irrelevant; it is an attempt to regulate something which Newbury Township has no power to regulate.

### B

#### *"Inhabited structure" restriction*

The part of this section which prohibits drilling oil or gas wells within three hundred feet of any structure that could be occupied by the public presents a

closer question. This distance limit appears on its face to be designed to promote health and safety. However, for the reasons which follow, we reverse and remand this issue to the trial court for a determination whether this restriction actually is an attempt to adopt health and safety standards.

R.C. 1509.23 gives the Chief of the Division of Oil and Gas the power to promulgate rules to protect public health and safety when oil and gas wells are drilled. Included among those powers is the ability to specify minimum distances from wells to buildings. Ohio Adm.Code 1501:9-1-05 bans the drilling of any oil or gas well within one hundred feet of an inhabited dwelling or public building.[3]

While R.C. 1509.23 lists those rules the chief of the division may specify, that statute does not forbid townships from adopting their own health and safety regulations. Rather, it is R.C. 1509.39 that specifically lists those areas townships may not regulate.[4] Therefore, the implication is that where R.C. 1509.39 does not specifically forbid local regulation, a township may adopt its own regulations, if done for the purpose of enacting health and safety standards. This result is consistent with the plain language of R.C. 1509.39.

Thus, it is significant for our purposes that the General Assembly failed to include in R.C. 1509.39 minimum distances from wells to buildings as one of the areas a township may not regulate. The maxim *expressio unius est exclusio alterius* is appropriate. (The expression of one thing implies the exclusion of another.) R.C. 1509.39 specifically provides that "no * * * township may adopt * * * resolutions * * * relative to the minimum acreage requirements for drilling units, and minimum distances from which a new well may be drilled * * * from boundaries of tracts, drilling units, other wells, and

---

3. Several other regulations may also be relevant to the trial court's consideration of this issue. For example, see Ohio Adm.Code 1501:9-9-05(A)(2) (requiring one hundred feet minimum distance from oil or gas storage tanks to inhabited structures); Ohio Adm.Code 1501:9-9-03(C) to (E) (requiring either a valve or a "blow-out preventor," depending on the tools used and the drilling medium, when drilling within two hundred feet of an inhabited structure); Ohio Adm.Code 1501:9-1-04(C)(3)(c) (requiring that no state drilling permit shall be issued for a well to produce oil or gas from pools from two thousand to four thousand feet deep, unless the well is at least three hundred feet from the boundary of the subject tract or drilling unit); Ohio Adm.Code 1501:9-1-02(A)(5)(d) (requiring a state permit application to list the locations of all buildings within one hundred fifty feet of a well site); R.C. 1509.06 (allowing the Chief of the Division of Oil and Gas to deny a state permit whenever a proposed well site presents imminent danger to public health or safety).

4. For example, R.C. 1509.23 allows the chief of the division to set minimum distances from oil and gas wells to streets, roads, and highways; and R.C. 1509.39 specifically prohibits townships from regulating distances from wells to streets, roads, and highways. The result is an explicit preemption of local regulation of those distances by state law.

from streets, roads, highways, railroad tracks * * *." No mention is made of minimum distances from wells to structures and buildings. For this reason, townships may adopt resolutions pertaining to distances from dwellings when it is done to further safety and health standards. Therefore, we remand this cause to the trial court for a determination whether the prohibition contained in Newbury Township Zoning Resolution Section 801.0 B against drilling an oil or gas well within three hundred feet of any structure or building to be occupied by the public is an attempt to adopt health and safety standards. The trial court, when it granted Lomak's motion for summary judgment, made no specific finding on that issue.

It is possible that the statutory scheme found in R.C. Chapter 1509, as it relates to distances from wells to buildings, so effectively protects the health and safety of all citizens of Ohio, including residents of Newbury Township, that additional local regulation of distances from wells to buildings is unnecessary. If that is the case, then this part of the zoning resolution would not further health and safety goals and would be invalid.

The judgment of the court of appeals that Newbury Township Zoning Resolution Section 801.0 A is invalid because it is preempted by state law is affirmed. The court's judgment that the regulation of distances from oil or gas wells to streets or highways contained in Newbury Township Zoning Resolution Section 801.0 B is invalid because it is preempted by state law is also affirmed. However, the court's judgment that the regulation of distances from oil or gas wells to occupied buildings contained in Newbury Township Zoning Resolution Section 801.0 B is invalid because it is preempted by state law is reversed and remanded to the trial court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

WRIGHT, J., concurs in part and dissents in part.

WRIGHT, J., concurring in part and dissenting in part.

I concur with the first paragraph of the syllabus and Part II A of the majority opinion. Because I believe the majority opinion otherwise unduly negates the power of townships to adopt zoning regulations, I must dissent with respect to the second paragraph of the syllabus and Parts I and II B.

## I

In my view, R.C. Chapter 1509 does not clearly preempt Section 801.0 A of the zoning resolution. I reach that conclusion, in part, because a reviewing court should normally defer to local zoning decisions, *Willott v. Beachwood* (1964), 175 Ohio St. 557, 26 O.O.2d 249, 197 N.E.2d 201, and because preemption of local ordinances is the exception, not the rule.

In *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373, we rejected the argument that state regulation of surface mining preempted local zoning regulations that prohibited such mining. In so ruling, we noted that "[t]he purpose of adopting a comprehensive township zoning plan is to promote the public health, safety, and morals." *Id.* at 265, 31 OBR at 466–467, 510 N.E.2d at 378. Similarly, I would hold that Section 801.0 A, although broad in scope, is also a part of a comprehensive township zoning plan to promote public health and safety, and thus is within the township's zoning power under R.C. 519.02 and 1509.39 to regulate drilling activities within the township.

The majority cites *Yorkavitz v. Columbia Twp. Bd. of Trustees* (1957), 166 Ohio St. 349, 2 O.O.2d 255, 142 N.E.2d 655, in support of its proposition that a township cannot regulate that which the state, by statute, has encouraged. *Yorkavitz* is inapplicable, however, because the ordinance the *Yorkavitz* court rejected was an ordinance that declared a regulated activity, airports, to be a nuisance, a declaration that the court found to be in direct conflict with a statute encouraging airport development. Here, nothing expressed within Section 801.0 A directly conflicts with the statutory language of R.C. Chapter 1509, which admittedly promotes the development of our state's oil and gas resources. Contrary to the majority's view, 801.0 A does not operate "as if Newbury Township has declared oil and gas wells to be nuisances *per se* in all areas zoned residential * * *." A township should be permitted to determine whether it wants oil and gas wells drilled within areas it has reserved for residential development, even if those areas currently could be better characterized as agricultural rather than residential. Restricting drilling to locations zoned commercial or industrial, contrary to the majority's assertion, is not the same as declaring wells to be nuisances *per se.*

The majority's imposition of an extra-statutory requirement that townships narrowly tailor their regulations to take into account local conditions, such as the character of the land, or population densities, in regulating oil and gas drilling, is simply not supported by statute or our prior decisions. The statute requires only that the regulations be directed to health and safety, that they be as restrictive as the provisions of R.C. Chapter 1509 or the rules adopted thereunder, and that they do not attempt to regulate in several areas specifi-

cally preempted by the statute, such as the minimum distance a new well may be drilled from streets, roads and highways. Because these *statutory* requirements are met, I would permit Section 801.0 A to stand as a proper exercise of Newbury Township's zoning authority.

## II

I find the restriction in Section 801.0 B that precludes drilling within three hundred feet of an inhabited structure to be, on its face, a rational and legitimate health and safety regulation. There simply is no need for the trial court to inquire further into the township's motives.

Were we deciding whether this regulation effectuates an unconstitutional taking, we would examine whether it is substantially related to a legitimate governmental interest in the health, safety or welfare of the community. *Columbia Oldsmobile, Inc. v. Montgomery* (1990) 56 Ohio St.3d 60, 564 N.E.2d 455. In its analysis, however, the majority imposes an even higher level of scrutiny to determine whether this regulation passes *statutory* muster. A standard as exacting as that demanded by the majority should not be applied here. In deciding whether a township regulation constitutes a legitimate exercise of delegated statutory authority, we need only examine whether it rationally promotes township health and safety, not whether it is narrowly tailored to address such concerns.

The majority's puzzling decision to remand this issue to the trial court to determine whether the distance restriction is "an attempt to adopt health and safety standards" is not accompanied by instructions on how the court should accomplish this task. Should the township be required to put on expert testimony that its regulation will further the goals of protecting public health and safety? I don't think so. Should the township trustees be subject to cross-examination as to their motives in passing the regulation? Of course not. Yet the majority's insistence that the court make a finding on this issue will require submission of some evidence, either by affidavit or testimony, to confirm what is plain on the face of the regulation—that the restriction rationally promotes public health and safety. Because I cannot countenance such an unnecessary waste of judicial resources, and because this court could dispose of this issue as a matter of law,[5] I respectfully dissent from Part II B of the majority opinion.

---

5. Indeed, the majority goes out of its way to suggest that R.C. Chapter 1509 may so effectively protect public health and safety that additional regulation on distances to inhabited buildings would not promote legitimate regulatory goals. Resolution of that issue is a matter of law, not a matter of fact, and the trial court is no better equipped than we to resolve it. Although I

_____

would vehemently dissent if the majority were to hold that R.C. Chapter 1509 absolutely preempts township health and public safety regulation in this area, I would nevertheless prefer a clear statement of the law to an implicit invitation to the trial court to declare the same.