NORTHAMPTON BUILDING COMPANY, Appellant,

v.

BOARD OF ZONING APPEALS OF SHARON TOWNSHIP et al., Appellees.

[Cite as *Northampton Bldg. Co. v. Sharon Twp. Bd. of Zoning Appeals* (1996), 109 Ohio App.3d 193.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2447–M.

Decided Feb. 7, 1996.

*Andrew J. Michaels,* for appellant.

*Dean Holman,* Medina County Prosecuting Attorney, and *William L. Thorne,* Assistant Prosecuting Attorney, for appellees.

BAIRD, Judge.

Plaintiff-appellant, Northampton Building Company, appeals the order of the Medina County Common Pleas Court affirming the decision of the Board of Zoning Appeals of Sharon Township ("BZA"), which denied appellant a variance. We affirm.

Section 1000–3A.4, Article X of the Sharon Township Zoning Resolution ("Section 1000–3A.4") provides that no building is to be erected within two hundred feet of any oil or gas wellhead.[1] On October 18, 1994, appellant sought a variance from the BZA in order to build a single-family residence within one hundred two feet of an oil and gas wellhead on sublot 16 in the Sharon Woods Subdivision of Sharon Township. The BZA conducted a hearing and denied the variance. Appellant appealed to the common pleas court, which affirmed the BZA's decision.

Appellant now appeals to this court, asserting six assignments of error.

### First Assignment of Error

"The Court of Common Pleas of Medina County, Ohio erred by failing to enforce explicit statutory commands of the Ohio General Assembly which clearly preempted any authority to regulate distances which residences may be built from oil and gas wells."

### Sixth Assignment of Error

"The Court of Common Pleas of Medina County erred in failing to find that the Sharon Township regulations and the Sharon Township Board of Zoning Appeals are illegally requiring what is essentially a second permit for permission to build a residence within 200 feet of a wellhead, contrary to Ohio Department of Natural Resources requirements."

In its first and sixth assignments of error, appellant argues that R.C. 1509.23, 1509.24, and 1509.39, as amended effective October 20, 1994, preempt the right of townships to regulate the distance a residence may be erected from an oil and gas wellhead and/or the distance an oil and gas wellhead may be placed from a residence.

R.C. 1509.23 provides that "[r]ules of the chief of the division of oil and gas [of the Ohio Department of Natural Resources] may specify practices to be followed

---

1. Section 1000–3A.4, Article X, states:
 "All oil and gas wellheads shall be placed not nearer than 200 feet from any residence or public building. Nor shall any such building be erected within 200 feet from any oil or gas wellhead, abandoned or not abandoned."

in the drilling of wells * * * including * * * minimum distances that wells * * * shall be located from * * * buildings." R.C. 1509.24 authorizes the chief to adopt rules relative to "minimum distances from which a new well may be drilled or an existing well deepened, plugged back, or reopened." In accordance with this authority, the chief has ruled that "[n]o well shall be drilled nearer than one hundred (100) feet to any inhabited private dwelling house." Ohio Adm.Code 1501:9–1–05.

 In order to further the public policy of the state of Ohio to encourage oil and gas production, "local regulation of some aspects of oil and gas well exploration and development is preempted by the statutory plan embodied in R.C. Chapter 1509." *Newbury Twp. Bd. of Trustees v. Lomak Petroleum (Ohio), Inc.* (1992), 62 Ohio St.3d 387, 389, 583 N.E.2d 302, 304. R.C. 1509.39 provides:

"This chapter or rules adopted under it shall not be construed to prevent any municipal corporation, county, or township from enacting and enforcing health and safety standards for the drilling and exploration for oil and gas, provided that such standards are not less restrictive than this chapter or the rules adopted thereunder by the division of oil and gas. No county or township shall adopt or enforce any ordinances, resolutions, rules, or requirements relative to the minimum * * * distances from which a new well or related production facilities may be drilled or an existing well deepened, plugged back, or reopened to a source of supply different from the existing pool from boundaries of tracts, drilling units, other wells, streets, roads, highways, railroad tracks, and any other structures or facilities included in section 1509.23 of the Revised Code * * *."

 R.C. 1509.39 clearly prohibits a township from adopting and enforcing any rule or resolution relative to the distance from which a *new* well may be drilled relative to an existing structure. However, nothing in the statute prohibits a township from determining, in the interest of public health and safety, how far from an *existing* well a new structure may be built. See, also, R.C. 519.02. A local regulation is in conflict with, and is preempted by, a state law only if the local regulation permits what the state law forbids or, in the alternative, forbids what the state law permits. See *Struthers v. Sokol* (1923), 108 Ohio St. 263, 268, 140 N.E. 519, 521.

Since Section 1000–3A.4, to the extent it is applicable to the case before us, provides only that no *building is to be erected* within two hundred feet from any oil or gas wellhead, no conflict exists between the provisions of R.C. Chapter 1509 and that portion of Section 1000–3A.4 pertaining to building construction. Accordingly, the trial court did not err in failing to reverse the order of the BZA on preemption grounds.

Appellant's first and sixth assignments of error are overruled.

## Second Assignment of Error

"The Court of Common Pleas of Medina County, Ohio erred in failing to recognize that prior to the Ohio statutory amendments of October 20, 1994, a township was permitted to regulate oil and gas well site locations in a residential area if the township zoning actions were based on legitimate health and safety concerns."

In its second assignment of error, appellant argues that, in the absence of a finding of preemption, the trial court was required to determine whether Section 1000–3A.4 was enacted for health and safety reasons. Appellant asserts that the court could not have determined this issue in the BZA's favor because there was no evidence in the record to support the BZA on that issue.

When reviewing the denial of an application for a variance pursuant to R.C. 2506.01, there is a presumption that the board's determination is valid. *C. Miller Chevrolet, Inc. v. Willoughby Hills* (1974), 38 Ohio St.2d 298, 67 O.O.2d 358, 313 N.E.2d 400, paragraph two of the syllabus. The burden of demonstrating the invalidity of the board's decision is on the contesting party. *Id.* If there exists a preponderance of reliable, probative, and substantial evidence to support the administrative decision, the trial court must affirm. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 202, 389 N.E.2d 1113, 1117.

Contrary to appellant's assertion, it is not generally the practice of courts to look into the appropriateness of local zoning resolutions. *Willott v. Beachwood* (1964), 175 Ohio St. 557, 560, 26 O.O.2d 249, 251, 197 N.E.2d 201, 204. The Supreme Court of Ohio has stated that it does "not wish to require courts to evaluate every township zoning resolution to determine if it is appropriate." *Newbury Twp. Bd. of Trustees v. Lomak Petroleum (Ohio), Inc.*, 62 Ohio St.3d at 391, 583 N.E.2d at 305. Where local courts are aware of population densities and special local conditions within their jurisdiction, inquiry into the appropriateness of local zoning decisions is, however, permitted. *Id.*

Although the trial court was not *required* to consider the appropriateness of Section 1000–3A.4, the transcript of the BZA hearing in this matter, which was before the trial court for its review, reveals that the issue of health and safety was considered by the BZA. Terry Spoonster, a member of the BZA, stated that the BZA was trying to help appellant and trying "to enforce the laws that we have here in our township for the protection of everyone." Spoonster stated that, although the BZA did not enact the zoning resolution, it was concerned about deviating from it in the event "some liability thing happens of catastrophic proportion with the wells."

Appellant introduced the testimony of John Jones, an engineer hired by appellant to conduct an investigation regarding safety, health, and welfare with respect to the requested variance. Jones stated that he had interviewed one individual with the Ohio Department of Natural Resources, who stated that, in his recollection, the only problems experienced by the department with regard to natural gas wells in Ohio were that lightning had hit storage tanks on two occasions, causing minimal damage. In questioning Jones, one BZA member stated that he knew of two wellhead fires and four tank battery fires caused by lightning in Sharon Township alone and that such fires were a fairly common occurrence in the township. Jones stated that he had no specific information regarding the well at issue, that he could not testify as to the well's pressure, and that he did not know if any gauges or recorders were in place.

Section 1000–1, Article X, of the Sharon Township Zoning Resolution states that the purpose of its oil and gas regulations is to "insure that any operations incidental to the exploration, extraction or storage of oil and gas take place in a manner wholly compatible with the surrounding land uses in the Township and which do not endanger the public health, safety and welfare."

Although the trial court was not required to investigate the motives of the township in enacting the regulation, there was sufficient evidence in the record to support a finding that the resolution at issue was enacted for health and safety purposes and that the BZA properly denied appellant's request for a variance. Accordingly, appellant's second assignment of error is overruled.

### Third Assignment of Error

"The Court of Common Pleas of Medina County erred in failing to recognize the pre-existing uses in place at Sharon Woods subdivision which require the court of common pleas to overturn the board of zoning appeals decision."

### Fifth Assignment of Error

"The Court of Common Pleas of Medina County, Ohio erred in failing to recognize that the Sharon Township Board of Zoning Appeals in denying the variance request has appropriated rights in plaintiff-appellant's property without compensation, in violation of plaintiff-appellant's constitutional rights (U.S. Constitution—Due Process—Amend 5 and 14)."

On August 1, 1975, appellant filed a plat of the Sharon Woods Subdivision with the Medina County Recorder. The plat, as recorded, bore the approval of the Medina County Engineer, the Medina County Health Department, the trustee of Sharon Township, and the Medina County Regional Planning Commission. The plat was also accepted by resolution of the Medina County Commissioners. Michaels Oil and Gas Company, which owns the drilling rights in the subdivision,

located its wellheads in the subdivision in 1980 and 1981, in accordance with then-existing state regulations, which required that new wells be placed at least one hundred feet from existing residences. According to the record before us, Sharon Township did not enact Section 1000–3A.4, effecting the two hundred foot provision at issue, until December 12, 1984.

In its third assignment of error, appellant argues that the BZA was required to approve its application for a variance because a pre-existing use legally existed on the property prior to 1984, permitting the construction of homes closer than two hundred feet from a wellhead. In its fifth assignment of error, appellant argues that, by denying its request for a variance, the BZA deprived appellant of its property without compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution recognize a right to continue a given use of real property if the use is already in existence at the time of the enactment of a land use regulation forbidding or restricting the land use in question. *Akron v. Chapman* (1953), 160 Ohio St. 382, 52 O.O. 242, 116 N.E.2d 697, paragraph two of the syllabus. In order to qualify as a prior nonconforming use, a land use must meet two requirements: (1) the use must have been in existence prior to the enactment of the prohibitory land use regulation; and (2) the land use in question must have been lawful at the time it commenced. *Pschesang v. Terrace Park* (1983), 5 Ohio St.3d 47, 5 OBR 104, 448 N.E.2d 1164, syllabus. In *Smith v. Juillerat* (1954), 161 Ohio St. 424, 53 O.O. 340, 119 N.E.2d 611, paragraph four of the syllabus, the court stated:

"Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property."

In the case before us, sublot 16 has not previously been used for residential purposes. Sublot 16 is a vacant lot with a wellhead situated on it. Appellant argues that, in *Michaels v. Sharon Twp. Bd. of Zoning Appeals* (June 10, 1981), Medina App. No. 1026, unreported, 1981 WL 4011, this court recognized a pre-existing nonconforming use with respect to lots in this subdivision under similar circumstances. *Michaels*, however, concerned a resolution which increased the minimum lot sizes required for construction within the subdivision. If enforced, that resolution would have prevented all building on the lots in question. No such deprivation is present in the case before us. The record demonstrates that a house can be located on sublot 16 under the present zoning regulations; it

simply cannot be located in the precise spot where appellant would like to place it.

Accordingly, appellant has not been deprived of a pre-existing residential use of sublot 16 because there has been no such use. Nor has appellant been deprived of the ability to use its property for residential purposes. Appellant's third and fifth assignments of error are overruled.

### Fourth Assignment of Error

"The Court of Common Pleas of Medina County erred in failing to recognize that the Sharon Township Board of Zoning Appeals in denying the variance request of plaintiff-appellant (to permit a residence to be built in Sharon Woods subdivision at a distance of less than 200 feet from a well-head) while permitting sublot 15 in the same allotment to construct a residence at a distance of less than 200 feet, has deprived the plaintiff-appellant property owner of its constitutional right to equal protection of the law, making the action of the Sharon Township Board of Zoning Appeals invalid (U.S. Constitution Amend 14)."

In its fourth assignment of error, appellant argues that, because the builder of sublot 15 was granted a variance permitting it to construct a home within one hundred thirty-two feet of a wellhead, and because appellant's request for a variance permitting it to construct a home within one hundred two feet of a wellhead was denied, appellant has been denied the equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

A township board of zoning appeals is without authority to consider constitutional issues. *Mobil Oil Corp. v. Rocky River* (1974), 38 Ohio St.2d 23, 26, 67 O.O.2d 38, 39–40, 309 N.E.2d 900, 902. The constitutionality of zoning ordinances or resolutions may, however, be raised on appeal in a court of common pleas pursuant to R.C. Chapter 2506. *SMC, Inc. v. Laudi* (1975), 44 Ohio App.2d 325, 328, 73 O.O.2d 378, 380, 338 N.E.2d 547, 550. R.C. 2506.03 limits the scope of a trial court's review to the transcript of the administrative proceedings below, unless certain exceptions set forth in the statute apply.

As the party challenging a zoning regulation, appellant has the burden of demonstrating that the zoning regulation is either facially unconstitutional or unconstitutional as applied to it. *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 95, 20 O.O.3d 88, 89, 420 N.E.2d 103, 105. Although appellant raised an equal protection argument before the trial court, it did not request that additional evidence be given on this issue. The BZA did request the right to present such evidence. However, in response, appellant discouraged the taking of additional evidence and stated:

"I disagree as to being able to reopen this matter for such evidence, when such evidence wasn't presented to the Board before. I think it is clear where you have a situation where they grant variances at their whim, that there is no standard, that you can complain there isn't equal protection."

With only the transcript of the proceedings before the BZA in this matter available for its review, we do not find that the trial court erred in failing to find that appellant was denied the equal protection of the law. The trial court did not have before it a transcript of any proceedings held relative to sublot 15, and the BZA's decision relative to sublot 15 was not accompanied by findings of fact to support its decision. Moreover, there is no evidence in the record from which a reviewing court can conclude that the variance permitting the construction of a home on sublot 15 within one hundred thirty-two feet from a wellhead and the variance requested by appellant permitting the construction of a home one hundred two feet from a wellhead are equal. Even if they were, it is within a township's right to modify its zoning policies in the interest of the health and safety of its residents. "Uses which do not conform to valid zoning legislation may be regulated, and even girded to the point that they wither and die." *Brown v. Cleveland* (1981), 66 Ohio St.2d 93, 96, 20 O.O.3d 88, 90, 420 N.E.2d 103, 106.

Accordingly, appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

QUILLIN, P.J., and SLABY, J., concur.