**AGRIGENERAL COMPANY, Appellant,**

v.

**LIGHTNER et al., Appellees.**

[Cite as *AgriGeneral Co. v. Lightner* (1998), 127 Ohio App.3d 109.]

Court of Appeals of Ohio,
Third District, Wyandot County.

No. 16–97–6.

Decided March 31, 1998.

*Christopher R. Meyer* and *William D. Lowe*, for appellant.

*Reginald S. Jackson, Jr., Janine T. Avila* and *Charles L. Bartholomew*, Wyandot County Prosecuting Attorney, for appellees Jackson Township Trustees.

*Terry Hord*, for appellee Mid–Ohio Fire Code Association.

*Lawrence H. Babich*, Assistant Prosecuting Attorney, for appellees Grand Township Trustees.

*Larry R. Gearhardt* and *Nan M. Still*, for *amicus curiae* Ohio Farm Bureau.

*J. Anthony Logan* and *Russell N. Cunningham, amici curiae.*

*Per Curiam.*

Plaintiff-appellant, AgriGeneral Company, L.P., appeals the judgment of the Court of Common Pleas of Wyandot County that granted summary judgment to defendants-appellees, Jackson Township Board of Trustees and Mid–Ohio Fire Code Association ("Mid–Ohio").

In November 1995, at a regularly scheduled public meeting of the Jackson Township Trustees, concerns were raised by citizens in attendance regarding the need for a fire code. By January 29, 1996, sufficient interest in this matter had been generated so that John Lightner made a presentation to Jackson Township about the Mid–Ohio Fire Code, a model fire code promulgated by his organization, Mid–Ohio. Mid–Ohio is an unincorporated association located in LaRue, Ohio, established in September 1995. Lightner, a captain in the Scioto Valley Fire District, is a member of Mid–Ohio, as well as its founder and spokesman. Additional members of Mid–Ohio include chiefs from three other local and surrounding fire departments.

Subsequent to Lightner's presentation to Jackson Township, additional public hearings were held. At these hearings, opponents and proponents for the adoption of the fire code were in attendance and voiced their concerns. Those speaking in favor of the code included numerous citizens of Jackson Township. The Ohio Farm Union also demonstrated its support of the fire code in a letter to the trustees of Jackson Township. Those opposed to the fire code included representatives of the Ohio Farm Bureau, the Ohio Poultry Association, the Ohio Sheep Improvement Association, the Ohio Cattlemen's Association, and the Ohio Florists' Association.

Representatives from AgriGeneral were also present and expressed their concerns about the proposed fire code. AgriGeneral is a limited partnership engaged in the business of shell eggs and related activities within Ohio. AgriGeneral owns a leasehold interest in real property located in Jackson Township. This site was intended to be used for AgriGeneral's construction and development of an egg-production complex. Prior to the public hearings held by Jackson Township, AgriGeneral filed an application with the Ohio Environmental Protection Agency ("Ohio EPA") for a permit to install the proposed facility. This permit would authorize the facility's construction and operation. Details of the planned complex were submitted to Ohio EPA, and after public information sessions and public hearings were held on this matter in Wyandot County, Ohio EPA granted AgriGeneral the permit to install.

Ultimately, the trustees unanimously passed a resolution adopting the Mid–Ohio Fire Code. This vote occurred on March 25, 1996, after the last of the Jackson Township public hearings on this issue and after Jackson Township had sought an opinion letter from an attorney regarding the township's authority to adopt this particular code.

On April 19, 1996, AgriGeneral filed a complaint in the Court of Common Pleas of Wyandot County requesting injunctive, declaratory, and monetary relief against Lightner, Mid–Ohio, Jackson Township, and its three trustees in response to the recently adopted fire code. In its complaint, AgriGeneral contended that portions of the fire code were pretextual, designed to hinder its ability to conduct business within Wyandot County. AgriGeneral stated that the fire code made it economically infeasible for land to be developed into farms for egg production. Thus, among other requests, AgriGeneral asked the trial court to declare the adopted fire code invalid, thereby preventing its enforcement by Jackson Township.

The complaint filed by AgriGeneral also included claims against the Grand Township board of trustees and its two trustees. The Grand Township trustees passed the fire code on March 12, 1997. However, an agreement was later reached on May 30, 1996, between these parties and AgriGeneral. As a part of this agreement, AgriGeneral voluntary dismissed the damages claims against the township and its trustees and dismissed the Grand Township trustees as defendants in this matter. In return, Grand Township agreed to remain a defendant, binding itself to the court's determination of the fire code's validity.

Nearly a year later, on April 22, 1997, AgriGeneral voluntarily dismissed all claims against Lightner and Mid–Ohio. At this same time, AgriGeneral also dismissed its damages claims against Jackson Township and its three trustees. However, in a judgment entry dated April 29, 1997, the court reinstated Lightner and Mid–Ohio as defendants in this matter by permitting Mid–Ohio to intervene as a matter of right.

Thereafter, the trial court considered Jackson Township and Mid–Ohio's previously filed motions for summary judgment. The trial court granted summary judgment to Mid–Ohio on August 8, 1997, and to Jackson Township on August 11, 1997. The court did so through findings of fact and law prepared by each defendant's attorney. From these decisions, AgriGeneral filed this appeal.

In support of its appeal, AgriGeneral lists the following as assignments of error:

"I. The Court erred in holding that there were no genuine issues of material fact regarding whether or not the Mid–Ohio Fire Code was a standard code or whether Jackson and Grand Townships had the authority to adopt said code.

"II. The Court erred in not finding that the Mid–Ohio Fire Code is in conflict with Ohio Revised Code Section 519.21 and is, therefore, invalid.

"III. The Court erred in holding that declaratory judgment was not a proper method for challenging the validity of a township resolution.

"IV. The Court erred in holding that Jackson Township Defendants were immune, as that issue was not pending before the trial court and the trial court was without jurisdiction to make such a ruling."

 This matter is before this court as a review of the trial court's granting of a summary judgment motion. In reviewing such a motion, an appeals court must apply the same standard as that used by the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Thus, summary judgment will be granted when no genuine issues of material fact remain to be litigated and, after viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). Summary judgment should be awarded with caution, with the trial court resolving doubts and construing evidence in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141.

 We will begin our discussion of the assigned errors by addressing the fourth assignment of error. This addresses the trial court's decision on an issue which AgriGeneral claims was not before the court for resolution. Specifically, AgriGeneral contends that the trial court was without authority to determine whether Jackson Township and its trustees were entitled to the defense of sovereign immunity.

In this case, AgriGeneral voluntarily dismissed its damages claims against Jackson Township in April 1997. Although AgriGeneral thereby removed the issue of sovereign immunity from the court's consideration, the court nonetheless ruled on this question in its August 11, 1997 judgment entry. Under these circumstances, it is our conclusion that the court had no authority to rule on this matter and any portion of the summary judgment entry which purports to do so is without effect. Accordingly, AgriGeneral's fourth assignment of error is sustained as to the immunity issue.

Next, our attention turns to the remaining assigned errors. Given our resolution of these assignments of error, they will be addressed together. When AgriGeneral filed its complaint against Jackson Township, AgriGeneral made the following specific requests for relief:

"WHEREFORE, [AgriGeneral] demands judgment against Defendants as follows:

"* * *

"B.) A permanent injunction against Defendants enjoining them from enforcing the Mid–Ohio Fire Code adopted by either the Jackson Township Board of Trustees or the Grand Township Board of Trustees;

"C.) A declaration that the Mid–Ohio Fire Code adopted by the Jackson Township Board of Trustees and the Grand Township Board of Trustees is invalid and may not be enforced against [AgriGeneral]."

In the trial court's judgment entry granting summary judgment to Jackson Township, each of these requests for relief was denied. The third assignment of error specifically cites the trial court's denial of declaratory relief, but a discussion of the trial court's action in regard to both of the relief requests is necessary. Accordingly, we will begin with AgriGeneral's request for injunctive relief.

In order for a plaintiff to be granted injunctive relief, that party must show that the relief is necessary to protect a clear right from immediate and irreparable harm when any other remedy at law is inadequate. *Ackerman v. Tri–City Geriatric & Health Care* (1978), 55 Ohio St.2d 51, 56, 9 O.O.3d 62, 65, 378 N.E.2d 145, 148–149; *Lemley v. Stevenson* (1995), 104 Ohio App.3d 126, 136, 661 N.E.2d 237, 244. Irreparable harm consists of the substantial threat of material injury that cannot be compensated with monetary damages. *Restivo v. Fifth Third Bank* (1996), 113 Ohio App.3d 516, 521, 681 N.E.2d 484, 486–487. Examples of irreparable harm include the threatened release of a trade secret, *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 28, 548 N.E.2d 267, 271–272, and the operation of an unlicensed nursing home, *Ackerman*, 55 Ohio St.2d at 57, 9 O.O.3d at 65–66, 378 N.E.2d at 149. The determination of a grant or denial of injunctive relief will not be reversed on appeal absent a showing that the trial court abused its discretion. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498–499.

In this case, the trial court found that AgriGeneral was unable to demonstrate any immediate or irreparable harm as a result of the passage of the fire code. We agree. AgriGeneral's purchase of the leasehold interest, creation of the facility site plans, and activities with the Ohio EPA do evidence an intent to build the egg-production facility. However, AgriGeneral's claim of economic infeasibility to further pursue its business venture is insufficient to show the harm that merits an injunction. More than mere plans to financially invest in a project is required. Accordingly, the trial court did not err in its refusal to grant injunctive relief.

AgriGeneral's next basis for relief is on a theory of declaratory judgment. R.C. 2721.03 states:

"Any person * * * whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise, may have determined any question of construction or validity arising under such instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."

In general, for a declaratory judgment action to have merit, a complaining party must demonstrate to a court the following three factors: "(1) the action is within the spirit of the Uniform Declaratory Judgments Act; (2) a real controversy between adverse parties exists which is justiciable in character; and (3) speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost." *Gannon v. Perk* (1976), 46 Ohio St.2d 301, 307, 75 O.O.2d 358, 362, 348 N.E.2d 342, 346; *Gray v. Willey Freightways, Inc.* (1993), 89 Ohio App.3d 355, 361, 624 N.E.2d 755, 759–760.

At this point, AgriGeneral's third assignment of error attempts to cast the trial court's denial of declaratory relief as a sweeping determination that a declaratory judgment complaint was not the proper method for AgriGeneral to challenge a township resolution. However, this is not what the trial court held. Specifically, the trial court found that had AgriGeneral presented no controversy capable of resolution because AgriGeneral's alleged injury was neither immediate nor real. Thus, the request for declaratory relief was denied.

In other words, the trial court presumed in its decision, consistent with *Carroll v. Washington Twp. Zoning Comm.* (1978), 56 Ohio St.2d 164, 168, 10 O.O.3d 337, 339, 383 N.E.2d 569, 571–572, that AgriGeneral could test the validity of Jackson Township's resolution in a declaratory judgment action. Therefore, when the trial court denied AgriGeneral's requested relief, the focus was entirely on the merits of the claim. Although we find AgriGeneral's characterization of the trial court's actions misleading, we nonetheless disagree with the trial court's basis for denying the requested declaratory relief.

The trial court supported its finding of lack of harm on the same grounds that it denied the requested injunctive relief. Yet this reasoning fails to take into consideration the first prerequisite for a declaratory judgment. The spirit of the Declaratory Judgments Act is to correct deficiencies in legal procedure and, as stated in *Gray*, 89 Ohio App.3d at 362, 624 N.E.2d at 760, "to provide a remedy in those situations where either none exists because a cause of action has not yet accrued or the assertion of legal rights is dependent upon the act of a third party or upon the passage of time. * * * Its basic purpose, in essence, is to relieve parties from acting at their own peril in order to establish

their legal rights." Thus, by applying the trial court's logic, AgriGeneral would be unable to challenge the validity of Jackson Township's fire code until it apparently first engages in additional actions, such as actually violating the fire code. This posture leaves AgriGeneral with no legal option for recourse and is contrary to the purpose of the Declaratory Judgments Act. Accordingly, the trial court erred in its resolution of this issue. To this extent only, the third assignment of error is sustained.

We further find that AgriGeneral's first and second assignments of error present several issues of fact on which reasonable minds could differ. In its first assignment of error, AgriGeneral questions the trial court's determination that the Fire Code is a standard document capable of adoption by Jackson Township. The basis of AgriGeneral's argument is that, according to statute, Jackson Township has the authority to adopt only a standard or model fire code. The relevant statute is R.C. 505.373, which states:

"The township board of trustees may, by resolution, adopt by incorporation by reference a standard code pertaining to fire, fire hazards and fire prevention, prepared and promulgated by the state, or any department, board, or other agency thereof, or any such code prepared and promulgated by a public or private organization that publishes a model or standard code."

In support of its assertion that the code adopted by Jackson Township was not standard or model within the definition of R.C. 505.373, AgriGeneral presented the deposition testimony and affidavit of Edward J. Prendergast. Prendergast has been with the city of Chicago, Illinois, for over thirty years and has acted as a fire prevention engineer. In this time, he has had substantial opportunities to be involved in fire code enforcement. Prendergast is also an adjunct professor at the National Fire Academy, where he teaches courses on the interpretation, drafting, and enforcement of fire codes.

Prendergast's statements were that portions of the Mid–Ohio Fire Code, most notably the first and third chapters, were unusual and unrelated to fire safety concerns. Thus, he said, the code was nonstandard. Specifically, he cited fire safety zones that set forth regulations based on the combined heights of two facing buildings and applied only to buildings longer than three hundred feet. He noted the lack of consideration of a building's construction materials and associated fire hazards. Another provision he considered unusual was a section that allowed for a building not to be in strict compliance with the code if an officer determined that no fire hazard existed. This was despite specific language in the fire code that mandated strict compliance as the minimum fire standard. Further, Prendergast said that the failure of the fire code to define the term "suitable gates" on a fire lane and the amount of water required to be on hand was unobjective and nonspecific, opening up the possibility of discrimina-

tory enforcement by local officials. Provisions in this code that related to fire truck turnaround zones and turning radiuses, and the submission of site plans, were also considered atypical.

On the other hand, Jackson Township responded to AgriGeneral's claims by relying upon R.C. 505.373. They note that they followed all the requirements set forth in that statutory provision to ensure proper adoption of the fire code. Jackson Township also states that they paid for this model code.

Mid–Ohio attempted to demonstrate the manner in which its code is standard by detailing the history and creation of the Mid–Ohio Fire Code. Mid–Ohio explained that it hired a professor of fire protection engineering from the University of Maryland, Vincent Brannigan, and created a committee of three additional persons, to create the fire code. Mid–Ohio also stated that although the fire code was based on the National Fire Prevention Code of 1993, a model code published by the Building Officials and Code Administrator International, Inc. ("BOCA"), the modifications to the first and third chapters of the BOCA document were permitted. According to Mid–Ohio, these modifications were made pursuant to a provision within the BOCA code that allows adopting jurisdictions to make necessary changes. The modifications were apparently intended to tailor the model fire code to specifically address fire prevention and firefighting within the rural northwest Ohio environment. AgriGeneral specifically stated that the basis of its complaint is the amendments to the BOCA code.

Upon a review of the record, we find that sufficient testimony exists to create an issue of fact and conclude that whether the Fire Code is considered a standard or model code is a question on which, based on the evidence presented, reasonable minds could reach different conclusions. Accordingly, the trial court erred in granting summary judgment on this issue and the first assignment of error is sustained.

In its second assignment of error, AgriGeneral claims that because the fire code conflicts with an Ohio statute, the resolution adopting that code is invalid. The statute with which AgriGeneral claims the fire code conflicts is R.C. 519.21, which reads:

"Except as otherwise provided in * * * this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, * * * and no zoning certificate shall be required for any such building or structure."

According to R.C. 519.01, AgriGeneral is engaged in an agricultural purpose, which states:

" '[A]griculture' includes * * * poultry husbandry and the production of poultry and poultry products * * *."

The conflict which AgriGeneral cites is that the Mid–Ohio Fire Code appears to have been created and adopted as a method by which to circumvent the apparent zoning exemptions of R.C. 519.21. Thus, AgriGeneral states that the fire code wrongfully imposes building and zoning codes on a statutorily exempted agricultural activity. This assertion is made independently from the argument questioning Jackson Township's authority to adopt the fire code as a model document.

To support this assertion, AgriGeneral has spent considerable energy detailing alleged examples of the animosity that it contends Lightner, on behalf of Mid–Ohio, and Jackson Township have towards it and its business ventures. Statements in Lightner's depositions serve as AgriGeneral's evidence that the fire code was created as a pretext for zoning regulation. AgriGeneral begins by noting that Lightner has been opposed to AgriGeneral's business activities since 1993, and several of his more notable activities have included signing petitions, conducting letter-writing campaigns, and obtaining leadership positions in groups opposing AgriGeneral. Based on AgriGeneral's characterization of Lightner's activities, it asserts that Lightner's interest in fire safety, founding of Mid–Ohio, and creation of the fire code are simply extensions of his activities to ensure that AgriGeneral does not do business within the county. AgriGeneral buttresses this with the fact that although Lightner is a volunteer fire fighter, this is his first attempt at preparing a fire code and he has never performed a fire code inspection or fought a fire where a fire code is in effect.

In regards to the drafting of the fire code, AgriGeneral notes that a chief assistant to Lightner was an attorney who represents AgriGeneral's chief competitor. Further, in the original drafts of the fire code, the provisions at issue specifically applied to large poultry operations, such as that proposed by Agri-General. Only in more recent drafts of the fire code, after advice of counsel, were the provisions altered to apply to agribusiness. Moreover, according to Lightner, the fire expert relied upon for assistance in preparing the fire code, Vincent Brannigan, was not even involved in the initial preparations of the fire code's drafting. Further, Brannigan was not contacted until the after the fire code had been adopted in a different township.

Finally, based upon the deposition of one of the Jackson Township trustees, AgriGeneral asserts that despite Jackson Township's notice that this proposed fire code was not considered a standard code, it proceeded to adopt the fire code undeterred. In particular, numerous agricultural commodities groups communicated to the Jackson Township trustees how the proposed fire code would be

detrimental to the agricultural interests in the area. Further, AgriGeneral maintains that when Jackson Township sought legal advice regarding the township's ability to adopt the fire code, an attorney who had previously advised a neighboring township that adoption of this fire code was beyond statutory authority was not hired by the township. Thus, Jackson Township obtained legal advice from a different attorney, and, according to this same trustee, the fire code was adopted despite the fact that the attorney's opinion letter had not yet been received. The actual opinion rendered by this attorney has not been disclosed by Jackson Township.

In rebuttal to the pretext charges, the Jackson Township trustees each submitted an affidavit that states that the trustees' intention behind the passage of the fire code was to "protect the lives, safety, welfare and property of the citizens of Jackson Township." Mid–Ohio responds that the fire code was created as part of its organizational purpose. This purpose, as stated in Mid–Ohio Articles of Association, Article 3, is:

"(A) To advance the interests of fire safety in order to preserve and protect lives and properties from loses [sic] or damage by fire.

"(B) To disseminate information regarding fire safety, and particularly fire safety concerns of rural and volunteer fire departments.

"(C) To publish a fire code pertaining to fire, fire hazards and fire preventions as a model for adoption by local governmental entities.

"(D) To take any other actions necessary and proper for the accomplishment of the purposes of the association."

Once again we find that this dispute raises genuine issues of material fact regarding the intention of the passage of the fire code. For instance, although a fire code may have some impact on agricultural activity, this fact alone would not necessarily constitute a violation of R.C. 519.21. On the other hand, even if a document is designated as a fire code, a violation of this statutory provision could still be present if the requirements were substantially similar to and had the effect of, or constituted mere pretext for, zoning property that has a statutory exemption. This was the case in *Newbury Twp. Bd. of Trustees v. Lomak Petroleum* (1992), 62 Ohio St.3d 387, 391–392, 583 N.E.2d 302, 305–306, where the Ohio Supreme Court held that a regulation passed by a township was not truly motivated by permissible health and safety concerns, but was a disguised attempt to prohibit an activity that the state of Ohio encourages. In any case, we find that reasonable minds could differ regarding Jackson Township and Mid–Ohio's motivations behind the creation of this fire code. Therefore, the trial court erred when it granted summary judgment on this issue, and to this extent only, the second assignment of error is sustained.

In sum, AgriGeneral's first and fourth assignments of error are sustained. The third assignment of error is overruled to the extent that it challenges the trial court's decision regarding the injunctive relief but sustained as to the declaratory relief. Finally, to the extent noted above, the second assignment of error is sustained. Thus, the portion of the trial court's summary judgment that declined injunctive relief is affirmed. However, for the reasons stated above, the remaining decisions of the trial court are reversed, and this matter is remanded to that court for the purposes of a trial as to the validity of the fire code and, resulting from the aforementioned issues, as to whether the fire code is a proper standard code or an improper zoning regulation.

Finally, on remand, the trial court is likely to encounter an additional argument by Jackson Township raised on appeal but which we find to be without merit. Specifically, Jackson Township maintains that AgriGeneral's complaint about the validity of the fire code should be dismissed because alternative remedies outlined in the fire code were not sought prior to filing suit. These alternate remedies allow a party to receive a variance from the fire code and permit appeals of any determinations.

The ability of a party to pursue a declaratory judgment action without having exhausted other administrative remedies was recently addressed in the Ohio Supreme Court decision of *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388. In *Jones,* at the syllabus, the Supreme Court held:

"The doctrine of failure to exhaust administrative remedies is not a jurisdictional defect to a declaratory judgment action; it is an affirmative defense that may be waived if not timely asserted and maintained."

Thus, the fact that AgriGeneral did not use any of the alternate remedies within the fire code is not detrimental to its claim.

Furthermore, there is no evidence within the record that Jackson Township has properly asserted and maintained this affirmative defense. The proper procedural technique for raising an affirmative defense is in a responsive pleading pursuant to Civ.R. 8(C) or an amended complaint pursuant to Civ.R. 15, either before or after trial. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 3–4, 12 OBR 1, 2–4, 465 N.E.2d 377, 378–380; *Mossa v. W. Credit Union, Inc.* (1992), 84 Ohio App.3d 177, 180, 616 N.E.2d 571, 573–574. Yet in this case there is no evidence of this argument being raised until Jackson Township replied to AgriGeneral's motion and memorandum against Jackson Township's motion for summary judgment. As stated in *id.* at 181, 616 N.E.2d at 574, "A summary judgment motion is not the proper format in which to raise an affirmative defense." Further, since the matter of the affirmative defense was raised only once in a summary judgment reply, we cannot say that an amendment conform-

ing to the evidence occurred. Consequently, we find that Jackson Township waived this issue and is precluded from raising it.

For the foregoing reasons, the trial court's grant of summary judgment is affirmed in part and reversed in part. Further, this matter is remanded to that court for proceedings consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SHAW, P.J., THOMAS F. BRYANT and HADLEY, JJ., concur.