VALENTINE, Appellant and Cross–Appellee,

v.

PPG INDUSTRIES, INC. et al., Appellees and Cross–Appellants.

[Cite as *Valentine v. PPG Industries, Inc.* (2001), 145 Ohio App.3d 265.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 01CA5.

Decided Aug. 15, 2001.

*Terrence W. Larrimer,* for appellant and cross-appellee.

*Habash, Reasoner & Frazier, LLP, Stephen J. Habash* and *Kelly Kauffman; Christensen, Shoemaker & Winkler* and *Kevin L. Shoemaker,* for cross-appellants.

*Betty D. Montgomery,* Attorney General, and *Jeffrey B. Hartranft,* Assistant Attorney General, for appellee.

PETER B. ABELE, Presiding Judge.

This is an appeal and cross-appeal from a Pickaway County Common Pleas Court judgment that dismissed an appeal from the Ohio Industrial Commission "for lack of subject matter jurisdiction." Linda Valentine, plaintiff below and appellant herein, assigns the following errors for our review:

"First Assignment of Error:

"The trial court erred by dismissing plaintiff's case, *sua sponte*, for lack of subject matter jurisdiction and by denying plaintiff's motion for a specific finding of fact and law."

"Second Assignment of Error:

"The trial court erred in denying plaintiff's motion for judgment on the pleadings."

PPG Industries, Inc. ("PPG"), defendant below and cross-appellant herein, posits the following additional assignment of error:

"This action should not have been dismissed for lack of subject matter jurisdiction because the common pleas court had the authority to remand the case to the Industrial Commission for clarification or correction of a clerical error pursuant to Section 4123.512 of the Ohio Revised Code."

A review of the record reveals the following facts pertinent to this appeal. David Valentine began work for PPG in 1969 and spent almost thirty years with the company as a lab technician and "environment specialist/clean-up worker." Valentine dealt with hazardous chemical spills on the jobsite. During the course of his employment, Valentine was exposed to numerous toxic chemicals including various hydrocarbon compounds linked to cancer. In 1997, he was diagnosed with glioblastoma multiform (a type of brain tumor) and underwent surgery as well as aggressive chemotherapy. Unfortunately, Valentine died on May 29, 1999.[1]

Valentine's widow, Linda Valentine (appellant), filed a claim for death benefits pursuant to R.C. 4123.59. The matter was heard on March 29, 2000, and the district hearing officer issued a report several weeks later. The hearing officer found that the conditions of the decedent's employment "created a risk of contracting the fatal condition of Glioblastoma [multiform] due to chemical

---

1. "Primary brain tumors (PBT)" were described below as "a relatively rare form of cancer" accounting for only "2–3% of all new cancers diagnosed * * * per year." Glioblastoma multiform ("GBM") comprises roughly twenty-two to thirty percent of new PBTs diagnosed each year. Despite the infrequent occurrence of this form of cancer, Valentine's co-worker also developed GBM and died around the same time.

exposure in a greater degree and in a different manner than in the public generally * * *" In reaching that conclusion, the hearing officer relied on the sworn statement of Dr. Miner "that the decedent-claimant's long-term exposure to chemicals in his employment is causally related to his condition of glioblastoma multiform and resultant death."[2]

PPG appealed and the matter was reviewed by a staff hearing officer on May 23, 2000. The staff hearing officer rendered his report several weeks later and it is this report that has formed the basis for the controversy in the instant appeal. The report begins by stating that "[t]he order of the District Hearing Officer, from the hearing date 03/29/2000, is *affirmed*." (Emphasis added.) However, the staff hearing officer then appears to contradict himself by ruling against the claimant (appellant). The reports provides, *inter alia*, as follows:

"As to the merits of the case, the decedent, as the District Hearing Officer indicated, was a laboratory technician and environment specialist/clean-up worker for the employer. The decedent's work did require him to be exposed to a wide variety of chemicals including hydrocarbons. Based on this type of exposure, Dr. Miner, a neurosurgeon who treated the decedent, stated pursuant to his 8/30/99 report the following in terms of the relationship of decedent's brain cancer and his employment, '* * * I do believe, that his long-term exposure to these chemicals as you described puts him at high risk and *could well* be the causative agent in his tumor' (emphasis added).

"Dr. Bontrager, a family physician, on 11/12/99, did file a review after *only* reviewing widow-claimant's medical evidence, and he stated it was medically reasonable to assume claimant's death was caused by the documented exposure to carcinogenic agents at work.

"On the other hand, the employer had the file reviewed by Dr. Bigner, an expert in brain tumors, on 2/4/00. Dr. Bigner stated that there is only one known cause of primary brain tumors, ionizing radiation, and there is no evidence the decedent was exposed to this agent.

"He went on and stated that it was [his] opinion that '* * * that exposure to chemicals or environmental agents in the work place of David Valentine played no role in the development or progression of his illness nor did exposure to any such chemicals or environmental agents increase his risks of developing Grade IV astrocytoma.'

"Dr. Buncher, an epidemiologist, on 3/27/00, stated that epidemiological studies of this workplace (Circleville, Ohio) and a prior study of this industry showed no

---

2. Michael E. Miner, M.D., Ph.D., is a physician, professor and Chairman of the Division of Neurosurgery at the Ohio State University Medical Center. He was one of the physicians who treated the decedent during the course of his illness.

increase in brain cancer was found or even suspected. Based on these studies, he opined that there was no reason to believe that there was any increase risk of brain cancer in decedent's workplace.

"The reports of Drs. Bigner and Buncher are found persuasive because previous scientific studies showed no risk of increased brain cancer where decedent worked, and even though the decedent was exposed to harmful chemicals, only one agent, ionizing radiation, has definitely been shown to cause brain tumors, and the decedent was not exposed to this agent.

"*Dr. Miner's report was not persuasive* because he didn't state the decedent's chemical exposure actually or even probably caused his brain cancer, only that it 'could well be' a causative agent. That lack of certainty is a fatal defect of that report.

"Dr. Bontrager's report was not relied on because he only reviewed claimant's evidence (p. 25 of transcript). Without considering all medical reports and evidence, his report is viewed as deficient.

"In view of the aforementioned analysis, *it is found that there is insufficient proof on file to causally relate decedent's death to his occupational exposure at work in terms of an injury or occupational disease.*" (Emphasis added.)

Despite the inconsistent language used in this report, all of the parties appear to have construed it as a reversal of the district hearing officer and a denial of benefits. An appeal was taken to the Industrial Commission but, on July 27, 2000, that body issued an order refusing to take any further action in the matter. Appellant then commenced the action below on August 8, 2000, as an appeal pursuant to R.C. 4123.512. Appellant alleged in her complaint that the decedent (her husband) had sustained an injury arising out of the course of his employment and asked that she be allowed to participate in "the benefits provided by the Workers' Compensation Act." PPG and the Bureau of Workers' Compensation ("BWC") both denied that appellant was entitled to any benefits.

Thereafter, the parties engaged in a contentious discovery battle during which time appellant either first noticed the contradictory language in the staff hearing officer's report or applied a different interpretation of the language. In any event, on November 3, 2000 appellant's counsel demanded payment of benefits based on the report's language that "affirmed" the district hearing officer's order and award of benefits. PPG filed a motion to stay discovery until the apparent contradiction(s) in the report could be resolved.

On December 20, 2000, the trial court conducted a pretrial conference. The court apparently directed the parties to draft an agreed entry to remand the case to the Industrial Commission for clarification.[3] The two sides could not agree

---

3. There is no transcript or other record of what transpired at that conference and, therefore, we take this information from a memoranda filed by PPG.

and so, on January 4, 2001, appellant asked for "judgment on the pleadings" or, in the alternative, a "determination of law" that the staff hearing officer's report was a "legal nullity" such that the trial court would not have jurisdiction over appellant's appeal in the first place. Appellant argued that the report's only reasonable interpretation was to affirm the district hearing officer's ruling. Appellant therefore concluded that she was entitled to judgment in her favor as a matter of law. Alternatively, appellant argued that the "inherent contradiction" in the report made it such that it was logically incapable of being interpreted in favor of either party and was, thus, a "legal nullity." Appellant maintained that under those circumstances, the trial court should make a "ruling of fact and law," finding that the order of the Industrial Commission was void and remand the case "to complete the administrative adjudication" of the appeal from the district hearing officer.

PPG responded with its own memoranda and proposed that the case be remanded to the Industrial Commission for a clarification of its previous order. The company argued that appellant's proposed alternative would essentially "straight jacket" the Industrial Commission and require it to hold an additional hearing in which appellant could take a proverbial "second bite at the apple," this time using additional discovery that she obtained during the course of her appeal to the common pleas court.

On January 21, 2001, the trial court denied both appellant's motion for judgment on the pleadings and her request for "alternative relief." At the same time, however, the court also dismissed her appeal "*sua sponte*, for lack of subject matter jurisdiction." This appeal and cross-appeal followed.

Initially, we note that we will jointly consider the assignments and cross-assignment of error because they all involve the related issues of (1) whether the trial court properly dismissed this case and (2) how best to address the inconsistencies in the staff hearing officer's report.

■ We begin our analysis by noting that appeals from the Industrial Commission to the courts of common pleas are governed by the provisions of R.C. 4123.512. The jurisdictional requirements of this statute are generally satisfied by filing a timely notice of appeal that is in substantial compliance with the dictates of the statute. See 94 Ohio Jurisprudence 3d (1999) 431, Workers' Compensation, Section 346. In the case *sub judice*, the trial court gave no explanation for its judgment dismissing the matter. Our review does not reveal any problems with the notice of appeal, and we find no other jurisdictional defect readily apparent from the record. We therefore agree with appellant and PPG insofar as they both argue that the dismissal was erroneous.

■ Presumably, the trial court's dismissal resulted from the contradiction in the staff hearing officer's report.[4] We note at the outset, however, that we are unaware of any authority that would sanction the dismissal of a workers' compensation appeal because of a contradiction in the order being appealed. None of the parties in this case has cited any authority for that proposition and we have found nothing to that effect in our own research. Generally speaking, a judgment may be so vague and uncertain as to be null and void. See 62 Ohio Jurisprudence 3d (1985) 352, Judgments, Section 27. One might argue that the same proposition would apply here in a workers' compensation case as well.

We, however, are simply not persuaded that the staff hearing officer's order was so inconsistent or contradictory as to call into question its meaning or validity. To be sure, one sentence in the report purports to affirm the district hearing officer's findings. That affirmance, however, is but one sentence in a rather extensive report. The staff hearing officer's report reviews all of the evidence adduced at the administrative level and ultimately concludes that the opinions of Drs. Bigner and Bunch deserve more weight than that of Dr. Miner. Finally, the hearing officer explicitly concludes that *"there [was] insufficient proof on file to causally relate decedent's death to his occupational exposure at work in terms of an injury or occupational disease."* (Emphasis added.)

This language constitutes a ruling against appellant and we conclude that the staff hearing officer's use of the word "affirmed" at the beginning of the order (in reference to the district hearing officer's order) was merely a scrivener's error. Obviously, this word was intended to be "overruled" rather than "affirmed." To hold otherwise would require us to completely ignore the opinion, which comports neither with sound jurisprudence nor good common sense. We would further emphasize that our interpretation of the staff hearing officer's order also co-incides with the interpretation given it by appellant and PPG through several stages of these proceedings. Appellant clearly believed that the staff hearing officer had ruled against her or she would not have appealed to the Industrial Commission and then to the trial court. Likewise, PPG and BWC both filed answers that admitted to appellant's allegations that her claim for death benefits had been denied by the staff hearing officer. We doubt whether PPG and BWC would have done so had they not also interpreted the ruling as adverse to appellant. All parties concerned thus came to the same conclusion as we do here—that the order in question denied appellant her claim for death benefits.

That said, and because no other apparent jurisdictional deficiency warrants a dismissal of the claim, we believe that the interests of justice are best served by

---

4. However, given that the trial court expressly overruled appellant's motion on this basis, it is difficult to tell with certainty whether this was the basis for the trial court's decision.

reversing the trial court's judgment and remanding this case for further proceedings. This would include a trial *de novo* on the merits of appellant's claim that she is entitled death benefits. See R.C. 4123.512(D) (the trier of fact shall determine the right of the claimant to participate in the fund upon the evidence adduced at the hearing on the action); see, also, *Afrates v. Lorain* (1992), 63 Ohio St.3d 22, 26, 584 N.E.2d 1175, 1179; *State ex rel. Mitchell v. Robbins & Myers, Inc.* (1983), 6 Ohio St.3d 481, 484, 6 OBR 531, 534, 453 N.E.2d 721, 724.

■ BWC asserts, however, that we should affirm the trial court's judgment and leave the parties precisely in the position where they were left after the trial court's judgment. We find that result to be untenable. Appellant has a statutory right to appeal her case to the common pleas court and, as she argues in her brief, that right would be denied if the trial court's decision were allowed to stand. BWC counters that the only issue in an appeal under R.C. 4123.512 is whether the claimant has a right to participate in the Workers' Compensation Fund. The agency argues that because appellant and PPG both asked the trial court to interpret the meaning of the staff hearing officer's report, they went outside the jurisdiction of the common pleas court and the appeal was correctly dismissed. We disagree.

We do not believe that we need to address the underlying premise of BWC's argument (that the common pleas court lacked jurisdiction to interpret the meaning of the staff hearing officer's order). The fact remains that appellant's complaint asked for a determination of her "right to participate in the benefits provided by the Workers' Compensation Act." That prayer for relief was not altered simply because she later sought an interpretation of the staff hearing officer's order. Appellant asked for a determination of her rights under the law, and she is legally entitled to have her case heard in the trial court.

■ Appellant agrees that the judgment should be reversed but argues that we should either confirm the purported holding of the staff hearing officer (that she was granted the right to participate in the Workers' Compensation Fund for death benefits) or require the trial court to include in its jurisdictional ruling "a concise statement as to the legal basis for the * * * determination that it lacks subject matter jurisdiction."[5] We reject both of these alternatives.

First, as noted earlier, we do not believe that the staff hearing officer ruled in appellant's favor. Our reading of the order is that no causal connection between decedent's cancer and the conditions of his employment has been established. Therefore, appellant is not entitled to judgment in her favor as a matter of law.

---

5. Appellant contends that an explanation for the trial court's findings is essential if the Industrial Commission is to take any further action in the case under the auspices of its continuing jurisdiction pursuant to R.C. 4123.52.

We also decline to order the trial court to issue a "concise statement" as to why it dismissed the appeal. As noted above, in our review we found that the appeal should not have been dismissed. We see no reason to order the trial court to issue any explanation.

Appellant claims that another defect exists in the staff hearing officer's report. Specifically, she contends that the order was signed "Robert Pellit by AK." [6] Appellant cites R.C. 4121.36(B)(3), which requires, *inter alia,* that a staff hearing officer's decision contain the signature of the "appropriate hearing officer." She concludes that "absolutely no indication [exists] in the record as to the identity of the individual 'AK'" and that the aforementioned statute was not complied with, thereby rendering the order a "legal nullity." We decline to address this issue for several reasons.

First, appellant did not raise this particular issue in the trial court. Generally, a court of review will not consider arguments for the first time on appeal. See *Skeini v. Johnson* (Dec. 28, 2000), Gallia App. No. 00CA03, unreported, 2000 WL 33226286; *Minix v. Collier* (Aug. 4, 2000), Scioto App. No. 99CA2690, unreported, 2000 WL 1154055. Second, this particular issue has not been raised as an assignment of error but rather as a portion of an argument in support of appellant's brief in response to the cross-appellant's arguments. Suffice it to say that appellate courts determine appeals on the basis of assignments of error rather than arguments on individual issues. See App.R. 12(A)(1)(b); see, also, *Reed v. Smith* (Mar. 14, 2001), Pike App. No. 00CA650, unreported; *Woods v. Owners Ins. Co.* (Feb. 1, 2000), Ross App. No. 99CA2486, unreported, 2000 WL 133850 Finally, it does not appear that the specific order upon which appellant bases this argument is actually contained in the record. The staff hearing officer report that was included as part of the petition and complaint was an unsigned copy, and included the notation that the signed copy was contained in the claim file. Copies of that "signed copy" are attached as exhibits to several of the briefs, but we have not found any of them as part of the original papers below. We are precluded by App.R. 12(A) from considering exhibits attached to briefs that were not made a part of the trial court proceedings. See *Isbell v. Kaiser Found. Health Plan* (1993), 85 Ohio App.3d 313, 318, 619 N.E.2d 1055, 1058; *Merillat v. Fulton Cty. Bd. of Commrs.* (1991), 73 Ohio App.3d 459, 463, 597 N.E.2d 1124, 1127. For all these reasons, we decline to address appellant's argument concerning the allegedly defective signature on the staff hearing officer's report.

PPG agrees that the trial court's judgment should be reversed but argues that the case should be remanded to the Industrial Commission for clarification or

---

6. Robert Pellitt was the staff hearing officer.

correction of the staff hearing officer's report. Appellant and BWC counter in their briefs that a trial court has no authority to remand a case to the Industrial Commission for further proceedings. See *Green v. B.F. Goodrich Co.* (1993), 85 Ohio App.3d 223, 226, 619 N.E.2d 497, 499; *Marcum v. Barry* (1991), 76 Ohio App.3d 536, 540, 602 N.E.2d 419, 422; *Williams v. Truck & Bus Div. of GMC* (Nov. 9, 2000), Montgomery App. No. 18455, unreported, 2000 WL 1675879. PPG responds that courts have remanded cases to the Industrial Commission in other instances. See *Borbely v. Prestole Everlock, Inc.* (1991), 57 Ohio St.3d 67, 71, 565 N.E.2d 575, 579; *Cook v. Mayfield* (1989), 45 Ohio St.3d 200, 206, 543 N.E.2d 787, 793; *Daniels v. Bethesda Hosp., Inc.* (1997), 121 Ohio App.3d 272, 277, 699 N.E.2d 964, 967. Fortunately, we need not resolve these apparent conflicts in authority at this time. In view of our conclusion that the staff hearing officer's order should be construed as a ruling adverse to appellant, we see no need to remand this case to the Industrial Commission. The matter may simply proceed on appeal as contemplated by R.C. 4123.512(D) and as originally contemplated by the parties when the case below was first commenced.[7]

For these reasons, appellant's second assignment of error is without merit and is overruled. However, appellant's first assignment of error, as well as PPG's cross-assignment of error, are well taken and sustained to the limited extent discussed herein. We remand this matter for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

HARSHA, J., concurs.

KLINE, J., concurs in judgment only.

---

7. We parenthetically note that our decision in the case *sub judice* should not be construed any broader than the unique procedural posture presented in this case. Had this been a typical civil or criminal appeal, and there was some arguable ambiguity in a trial court order, we may well have remanded the matter for clarification or resolution. However, as aptly noted in the briefs, "the Industrial Commission is *not* a party in the instant litigation." Even if the staff hearing officer's report was ambiguous, and further assuming that we did have jurisdiction to remand the case for clarification in the first place, there is nothing to ensure that the Industrial Commission would, in fact, take further action pursuant to our remand. We conclude that the best course of action is to remand this case for proceedings on a trial *de novo* pursuant to R.C. 4123.512(D).