OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and an amicus brief submitted by the Ohio School Boards Association. Defendant-Appellant, United Local School District Board of Education appeals the November 29, 2007 decision of the Columbiana County Court of Common Pleas that granted summary judgment on a declaratory judgment action in favor of Plaintiff-Appellee Donald W. Thernes, Jr., Superintendent, Multi-County Juvenile Attention System District.
 {¶ 2} On appeal, United argues that the court committed prejudicial error by prematurely entering a decision before United's reply brief deadline, that Thernes failed to state a claim for declaratory relief in his complaint and his motion for summary judgment, and that the court incorrectly applied R.C. 2151.362.
 {¶ 3} Although the parties' relationship was governed both by statute and by a contract with differing terminology, an interpretation of the parties' statutory relationship would not contravene the spirit of the Declaratory Judgments Act. However, the trial court entered its judgment three weeks prior to the deadline that it set for United to reply to Thernes's motion for summary judgment, and United had not submitted a reply by that point. United submitted its own motion for summary judgment requesting dismissal for failure to state a claim, but did not address the issues of Thernes's motion. The trial court's decision is affirmed in part, reversed in part and this case is remanded back to the trial court for further consideration.
 Facts {¶ 4} Appellant, United is a local school district which serves a portion of the students in Columbiana County, Ohio. Appellee, Thernes is the superintendent of the Multi-County Juvenile Attention System District which serves Carroll, Columbiana, Holmes, Stark, Tuscarawas, and Wayne Counties. MCJAS operates the Louis Tobin Attention Center, located in Columbiana County. The Center is responsible for the care and maintenance of juveniles placed in the facility by juvenile court judges in Columbiana and surrounding counties. The Center's facilities include an educational space for its juvenile residents.
 {¶ 5} The statutory relationship between United and the Center is initiated when the juvenile court identifies United as the school district responsible for the cost of educating the child at the time the court places the child in the Center. United is one of several school districts that have the possibility of being assigned such responsibility to the Center. Each school district with a child in the Center is statutorily required to pay the cost of the educational program that the Center provides to that child. The Center is also statutorily authorized to change and/or supplement its relationship with one or all of the applicable schools by contract whereby a school would directly provide the teachers, rather than reimbursement thereof.
 {¶ 6} United and MCJAS entered an "Agreement for Educational Services" ("contract") on January 8, 1998 whereby United would provide the teachers and other staff to conduct the educational program within the Center. The contract's term is year-to-year, with each party able to terminate the contract, effective at the end of the school year, with written notice by March 31 of that year.
 {¶ 7} Section 8 of the contract states as follows: "[United] shall assume the responsibility for billing outside school districts for the educational services provided. Such billing shall include a ten percent administrative cost."
 {¶ 8} The record indicates that the parties began to dispute cost issues during the 2004-2005 school year. United had a contractual duty to assume the Center's billing responsibilities for other school districts within the Center's domain. United alleged that it was unable to bill for its educational services, or for the 10% administrative cost, because the Center would not release enrollment data for the other school districts.
 {¶ 9} During the 2004-2005 school year, Thernes proposed a new contract with Section 8 changed to state, in pertinent part, the following: "The United Local District shall assume the responsibility for billing outside school districts for the educational services provided. Such billing shall include a 10% (of the cost of the Educational Program) administrative cost that will be paid to the Multi-County Juvenile Attention System." United stated that it was unable to enter the proposed contract. *Page 4 
 {¶ 10} An argument ensued as to whether R.C. 2151.362 (then codified as R.C. 2151.357) gave Thernes the legal authority to collect administrative costs from United and other school districts. As the parties were unable to resolve their dispute, Thernes filed a complaint for declaratory judgment on July 17, 2006, requesting the construction of R.C. 2151.362. Thernes's complaint asserted that the per capita cost of the educational facility at the Center included "overhead, administrative, and operational costs." Thernes's prayer for relief requested that the court declare that R.C. 2151.362 requires United "to pay the costs of educating children [at the Center] based on the per capita cost of the educational facility within the Center."
 {¶ 11} United's answer denied allegations in the complaint, and requested that the court dismiss the case, pursuant to Civ. R. 12(B)(6), for failure to state a claim upon which relief could be granted. United additionally requested denial for want of real controversy or justiciable issue which would be terminated by a declaratory judgment.
 {¶ 12} On June 1, 2007, Thernes sent written notice to United via certified mail that Thernes was exercising his option to terminate their contract, effective at the end of the school year of 2008.
 {¶ 13} Both parties produced documents regarding the costs involved in the educational program at the Center. United submitted that the expenses of the educational program were salaries for teachers, a teacher's aide, a psychologist, educational supplies and educational equipment. Thernes submitted that the expenses of the educational program also included 10% of the salaries of the Center's direct care day staff (including secretary, administrator, cooks, nurses, and youth leaders), 10% of the salary of the suicide intervention specialist, 1% of the salaries of the Center's maintenance staff, one percent of the salaries of the Center's administrative staff (including the superintendent, director of detention, director of administrative support, administrative assistant, clerks, payroll, receptionists, and program analyst), 10% of the total operating expenses of the Center (including office supplies, maintenance supplies, general supplies, medical supplies, gasoline, data *Page 5 
processing, building repair and services, licenses, property insurance, T-1 lines, and education services), and 28% of the utility costs (including gas, electric, phones, and other utilities) based on the square footage of the educational facility within the Center.
 {¶ 14} Subsequent to interrogatories, motions to compel, discovery, and extensions of time, the trial court set a deadline of October 19, 2007 for motions for summary judgment. On October 17, 2007, Thernes filed a motion for summary judgment, stressing that the action was not for breach of contract, and instead for a prospective construction of R.C. 2151.362 which explains whether school districts are required to "reimburse MCJAS for its costs, `based on the per capita cost of the educational facility' within [the Center]." Thernes's motion concluded by asking the court to direct United to include the Center's expenses in the total cost of the educational program, including "the educational space, adjunct detention and/or treatment staff, and administrative support for the educational program." Thernes also asked the court to direct United to bill the outside school districts for the per capita cost of said total amount and to pay MCJAS the money United receives.
 {¶ 15} On October 19, 2007, United filed a motion for summary judgment, indicating that the contract between the parties mooted the necessity and applicability of the judicial construction of R.C. 2151.362. United's motion prayed that the trial court dismiss Thernes's declaratory judgment action "on the grounds that [Thernes] has failed to state a claim upon which relief can be granted, as there is no real controversy or justiciable issue between the parties which can be settled by the grant of a declaratory judgment."
 {¶ 16} On October 19, 2007, the trial court gave notice of assignment to United for responses to Thernes's motion for summary judgment, with a deadline of December 21, 2007. On November 29, 2007, the trial court filed a judgment entry in favor of Thernes. The trial court noted that the statute "seems pretty clear on its face that the home school district of the child is to pay the entire cost of educating the child at the detention facility. This would include the cost of any teachers, contract service, *Page 6 
equipment facilities, administration, etc. In the instant situation this would be over and above the cost paid by the home district to the defendant for the teachers provided. The statue [sic] obviously contemplates educational facility at the detention facility and leaves to the trustees or superintendent the manner of accomplishing staffing such educational facility."
 {¶ 17} The trial court stated that there was a real controversy between the parties and that an interpretation of the statute was necessary for the parties to understand their current relationship and future obligations. The trial court then found that the matter was appropriate for declaratory judgment, and declared that R.C. 2151.362(B) "provides that the home district of a child placed in detention at the plaintiff's facility shall pay the entire cost of educating that child based on the per capita cost which would include educational personnel costs, administration personnel costs, costs of physical facilities including buildings, utilities, machinery, etc. This is left to the plaintiff to determine what those costs are and to recoup those from the child's home district or is appropriate or can contract for. [sic]"
 Declaratory Judgment {¶ 18} We will address United's first two assignments of error out of order. In its second assignment of error, United argues:
 {¶ 19} "The Trial Court erred to the prejudice of Appellant in granting the Motion for Summary Judgment of Appellee and denying the Motion for Summary Judgment of Appellant on Appellee's request for declaratory judgment regarding O.R.C. § 2151.362, as Appellee failed to state a claim for declaratory relief."
 {¶ 20} United claims that the declaratory judgment action was an improper vehicle for Thernes to use for relief against United. This assignment of error only examines the propriety of using a declaratory judgment action in these circumstances, not the content of the declaration itself.
 {¶ 21} Pursuant to the Declaratory Judgments Act, "any person whose rights, status, or other legal relations are affected by a * * * statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a *Page 7 
declaration of rights, status, or other legal relations under it." R.C. 2721.03. When an action for declaratory judgment is disposed of in summary judgment, the appellate court reviews the decision de novo.King v. W. Res. Group (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947.
 {¶ 22} In order for a court to proceed with a declaratory action, there must be a real and justiciable controversy between parties with adverse legal interests where speedy relief is necessary to preserve the rights of the parties. Burger Brewing Co. v. Liquor Control Comm.
(1973), 34 Ohio St.2d 93, 63 O.O.2d 149, 296 N.E.2d 261, at paragraph one of the syllabus. Furthermore, a declaratory action must fall within the spirit of the Declaratory Judgments Act, the purpose of which is "to relieve parties from acting at their own peril in order to establish their legal rights." Gray v. Willey Freightways, Inc. (1993)89 Ohio App.3d 355, 362, 624 N.E.2d 755.
 {¶ 23} According to R.C. 2721.13 of the Act, the provisions of the declaratory judgment rules are remedial in nature and are to be liberally administered. Courts have wide latitude in deciding to entertain a declaratory action. Owens-Corning Fiberglas Corp. v.Allstate Ins. Co. (1993), 74 Ohio Misc.2d 159, 660 N.E.2d 755. The only situations in which a court might decline to render declaratory judgment are: "(1) where there is no real controversy or justiciable issue between the parties, or (2) when the declaratory judgment will not terminate the uncertainty or controversy, under R.C. 2721.07. Otherwise, the court is required to issue a judgment declaring the rights or legal relations, or both, of the parties." Fioresi v. State Farm Mut. Auto.Ins. Co. (1985), 26 Ohio App.3d 203, 26 OBR 424, 499 N.E.2d 5, at paragraph one of the syllabus.
 {¶ 24} For a controversy to be real or justiciable, the complainant cannot seek a decision which is advisory, which answers a mooted question, or which answers an abstract question based on facts that may or may not actually materialize. Thomas v. Cleveland (2000),140 Ohio App.3d 136, 142, 746 N.E.2d 1130. However, a declaratory judgment need not be the sole remedy available in a controversy: it can be an alternative to other available remedies, so long as it is within the spirit of the Act *Page 8 
and complies with the aforementioned requirements. Swander DitchLandowners' Ass'n v. Joint Bd. Of Huron and Seneca County Com'rs (1990),51 Ohio St.3d 131, 135, 554 N.E.2d 1324. A declaratory judgment also need not be a final and complete remedy to a controversy: a court may issue declaratory relief "whether or not further relief is or could be claimed." R.C. 2721.02(A); Neal v. Reliance Electric EngineeringCo. (1963), 118 Ohio App. 501, 504, 26 O.O.2d 12, 196 N.E.2d 128.
 {¶ 25} Finally, although a court's discretion is limited in refusing to enter a declaratory judgment under R.C. 2721.07, it is not so limited in deciding to enter a declaratory judgment, even if the judgment does not completely solve the controversy. See also Celina Mut. Ins. Co. v.Sadler (1966), 6 Ohio App.2d 161, 164, 35 O.O.2d 319, 217 N.E.2d 255;Gates Mills Investment Co. v. Village of Pepper Pike (Nov. 21, 1974), 8th Dist. No. 33291, at *4 (Krenzler, dissenting) (judgment reversed) ("the action must at least terminate some uncertainty or some
controversy before the trial court may entertain the action and it is not necessary to terminate all uncertainty or all controversy") (emphasis in original); Superior Dairy, Inc. v. Stark County MilkProducers' Ass'n (1950), 89 Ohio App. 26, 30, 45 O.O. 326,100 N.E.2d 695 ("[The Declaratory Judgments Act] does not prohibit a court from making a declaration even if the uncertainty or controversy would not be terminated.").
 {¶ 26} Thus the Act gives the trial court broad discretion in deciding to entertain Thernes's request for a declaratory judgment on the meaning of R.C. 2151.362. The trial court would only be able to refuse to enter judgment if Thernes has submitted a hypothetical or otherwise non-justiciable issue, or if the court finds that a construction of R.C. 2151.362 would not solve any controversy whatsoever between United and Thernes.
 {¶ 27} United argues that declaratory judgment is inappropriate because there is no real controversy between the parties and because the judgment would be advisory in nature and will not terminate the controversy between the parties. United relies upon the parties' contract for these three arguments. According to United, the contract, not the statute, ultimately governs the parties and the contract's terms *Page 9 
resolve the matter at issue, thus leaving no real controversy between the parties regarding the meaning of the statute. Because the contract may be renewed from year to year, the court can only speculate that the statute will ever apply to the parties, causing the court's decision to be hypothetical or advisory in nature. And again, because the contract controls, an interpretation of the statute does not solve the controversy between the parties.
 {¶ 28} Considering the Act's policy of remediation and liberal application, declaratory judgment was proper in this case. Although there was a contract in force at the time of the complaint, Thernes's action for declaratory judgment on the statute was within the spirit of the Act because Thernes has a right to know what his statutory rights and obligations are in relation to United and other school districts. Thernes should not have to put himself in the untenable position of ending all contracts in order to have the right simply to know what his rights are.
 {¶ 29} More specifically, there is in fact a real controversy or justiciable issue, which does not require the court to make hypothetical decisions. Whether "administrative costs" involved with the education of a child are included in the per capita cost of educating a child under R.C. 2151.362 is a question which is properly determinable by declaratory judgment. Burger Brewing Co. at 96-97. The parties' respective rights to reimbursement or responsibility to pay are affected by R.C. 2151.362, and by the parties' understanding of the statute.
 {¶ 30} It is not mere conjecture that the parties might be affected by the statute. Under R.C. 2151.362, United and Thernes are required to have a relationship indefinitely, as long as there are school aged children within their domains. Whether a contract will end up altering the relationship is a possibility, but the constant factor in this situation is the parties' basic statutory duties towards one another. Thus the contract does not prohibit Thernes from understanding his statutory rights and responsibilities.
 {¶ 31} Whether a declaratory judgment on the meaning of R.C. 2151.362
could solve the controversy between United and Thernes is a closer issue, but the use of *Page 10 
declaratory relief was nonetheless appropriate. United asserts that the terms of the contract would vitiate any effect of the declaratory judgment, rendering it meaningless. While it is true that an action on the contract could provide a result that differs from the declaratory judgment, the outcome of any contract action would be pure conjecture at this point. Moreover, the contractual and statutory relationships between the parties are not mutually exclusive. By clarifying the statutory relations at issue, the declaratory judgment would resolve a controversy between the parties, regardless of the fact that the parties would have additional legal relations outside the statute.
 {¶ 32} Additionally, United argues that the decision as written was too vague to supply the parties with adequate guidance, and that the last sentence was unintelligible.
 {¶ 33} A definite and clear decision must be worded so that the parties can understand both the rights and obligations thereunder determined, and what is necessary for the parties to comply with the decision. Burns v. Morgan, 165 Ohio App.3d 694, 2006-Ohio-1213,847 N.E.2d 1288, at ¶ 10. While it is true that a decision may be so vague that it must be voided, an ambiguity in the decision may also merely necessitate an interpretation by the reviewing court, or clarification by the trial court. Valentine v. PPG Industries, Inc. (2001),145 Ohio App.3d 265, 271, 762 N.E.2d 469; Bowen v. Bowen (1999),132 Ohio App.3d 616, 634, 725 N.E.2d 1165.
 {¶ 34} United asserts that any number of responsibilities could be included in the term "etc.," which the trial court uses twice in its decision. However, within the context of the indefinite language of 2151.362, the list of expenses that may be included in an educational program cannot be comprehensive. The trial court did leave some words out of the final sentence so as to make it at least confusing. However any problem with the wording of the trial court's opinion will be remedied on remand, thus mooting this issue.
 {¶ 35} In summary, there is a real and justiciable controversy between United and Thernes regarding the meaning of R.C. 2151.362, and that a judicial interpretation of R.C. 2151.362 would solve at least some of the controversy between the parties. *Page 11 
Accordingly, the declaratory judgment action was appropriate for this case, and United's second assignment of error is meritless.
 Premature Summary Judgment {¶ 36} In its first assignment of error, United argues:
 {¶ 37} "The Columbiana County Court of Common Pleas ("Trial Court") erred to the prejudice of Defendant-Respondent/Appellant United Local School District Board of Education ("Board" or "Appellant") in ruling on the Motion for Summary Judgment of Plaintiff-Relator/Appellee Donald W. Thernes, Jr., Superintendent, Multi-County Juvenile Attention System District ("Appellee"), without affording Appellant the opportunity to file a response to Appellee's Motion for Summary Judgment by Friday, December 21, 2007 as provided under the Trial Court's Order of October 19, 2007."
 {¶ 38} United claims that the trial court committed prejudicial error when it granted Thernes's Motion for Summary Judgment without affording United the chance to submit a response to the motion. Thernes counters that United was afforded an opportunity to be heard through its own separate Motion for Summary Judgment, rendering the trial court's premature ruling on Thernes's motion to be harmless error.
 {¶ 39} An appellate court reviews a summary judgment decision de novo, applying the same standard used by the court below. Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Summary judgment is only appropriate if the moving party demonstrates "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46; Civ. R. 56(C). Summary judgment should be granted with caution, and a court must construe all evidence and decide any doubt in favor of the nonmoving party. Id.;AgriGeneral Co. v. Lightner (1998), 127 Ohio App.3d 109, 114,711 N.E.2d 1037, citing Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 360,1992-Ohio-95, 604 N.E.2d 138. *Page 12 
 {¶ 40} A party who moves for summary judgment bears the burden of providing a basis for the motion so as to provide the nonmovant with a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 526 N.E.2d 798, at paragraph one of the syllabus. Once this burden is discharged, the nonmovant bears the reciprocal burden in order to oppose the motion. Vahila v. Hall, 77 Ohio St.3d 421, 430,1997-Ohio-259, 674 N.E.2d 1164.
 {¶ 41} Because the opposition to a motion for summary judgment is a great undertaking with great consequences, a nonmovant should be afforded the adequate amount of time to respond in order to assure that the summary judgment process is fair. Hooten v. Safe Auto Ins. Co.,100 Ohio St.3d 8, 2003-Ohio-4829, 795 N.E.2d 648, at ¶ 34; Petrey v.Simon (1983), 4 Ohio St.3d 154, 157, 4 OBR 396, 447 N.E.2d 1285, quoting 10A Wright, Miller Kane, Federal Practice and Procedure (1983) 6-7, Section 2719. In order to ensure procedural due process and fundamental fairness for the parties involved, the requirements of Civ. R. 56 "must be strictly enforced." Murphy at 360.
 {¶ 42} Rendering a decision prior to a cutoff date is not, in itself, prejudicial error. See, e.g., Carpenter v. Columbus Motor Lodge,Inc. (1990), 67 Ohio App.3d 589, 587 N.E.2d 916. In Carpenter, the Tenth District stated that a ruling which was premature by eight days did not prejudice the appellant because appellant had been given an extension and did file a memorandum contra appellee's motion for summary judgment. Id. at 595. This court distinguished Carpenter in a manner germane to this case. Bombardier Capital, Inc. v. W.W. Cycles, Inc.,155 Ohio App. 3d 484, 2003-Ohio-6716, 801 N.E.2d 900. The appellant inBombardier did not file a response to appellee's motion for summary judgment, and the trial court granted summary judgment prior to the response cutoff. We noted that the prevention of the appellant's response was "the quintessential example of prejudice that results from a due process violation, because appellant never had a chance to demonstrate its point of view to the trial court." Bombardier at ¶ 25.
 {¶ 43} We reached a similar decision in Gentile v. YoungstownOsteopathic *Page 13 Hospital, 7th Dist. No. 04 MA 93, 2005-Ohio-2926. In Gentile, the appellant did respond to appellee's motion for summary judgment. Appellant's motion did not address the merits of appellee's motion, and instead requested a stay on the motion for the purpose of completing more discovery. Id. at ¶ 5. The trial court granted such stay, but one year later granted summary judgment to appellee without notifying appellant of its intent to rule on the motion. Id. at ¶ 7. Relying onBombardier and Hooten, this court held that such failure to notify deprived appellant of a fair opportunity to be heard. Id. at ¶ 15-18, 26-27.
 {¶ 44} Thernes argues that United's supporting cases are distinguishable in that United had the opportunity to be heard through filing its own summary judgment motion. However, United's motion for summary judgment did not address the merit issues of Thernes's motion, which prayed for a particular interpretation of R.C. 2151.362. United's motion for summary judgment only argued that declaratory judgment was an inappropriate vehicle to solve the dispute. Because United's motion did not address issues of the interpretation of R.C. 2151.362, considering the motion as a substitute for a response would deprive United of a fair opportunity to be heard.
 {¶ 45} The requirements of Civ. R. 56 must be strictly enforced.Murphy at 360. United was not afforded an adequate opportunity to respond to Thernes's motion for summary judgment due to the trial court's premature judgment, in contravention to United's right to procedural due process and fundamental fairness. United did not receive an adequate substitute in United's own motion for summary judgment because the motion did not discuss the merits of Thernes's motion. Accordingly, United's first assignment of error is meritorious.
 {¶ 46} In its third assignment of error, United argues:
 {¶ 47} "The Trial Court erred to the prejudice of Appellant in its interpretation of O.R.C. § 2151.362 in its Judgment Entry of November 29, 2007."
 {¶ 48} Given our disposition of United's first assignment of error, this assignment of error is rendered moot.
 {¶ 49} Accordingly, United's second assignment of error is meritless and the *Page 14 
trial court's judgment that a declaratory action was appropriate for the controversy between the parties is affirmed. United's first assignment of error is meritorious and the remainder of the trial court's judgment is reversed, rendering United's third assignment of error moot. This case is remanded to the trial court for further consideration subsequent to United's response to Thernes's Motion for Summary Judgment.
 Donofrio, J., concurs. Vukovich, J., concurs. *Page 1