[Cite as *Thernes v. United Local School Dist. Bd. of Edn.*, 2011-Ohio-6216.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, ex rel., DONALD W. THERNES, JR., SUPERINTENDENT, MULTI-COUNTY JUVENILE ATTENTION SYSTEM, | ) ) ) ) | |
| | ) | CASE NO. 09 CO 33 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | OPINION |
| UNITED LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, | ) ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common Pleas of Columbiana County, Ohio Court Case No: 08CV591

JUDGMENT:      Affirmed

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: December 5, 2011

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellant | Attorney Michael P. Zirpolo<br>Suite 206, Belden Village Tower<br>4450 Belden Village Street, N.W.<br>Canton, Ohio 44718 |
| For Defendant-Appellee | Attorney Christian M. Williams<br>5005 Rockside Rd., Suite 260<br>Cleveland, Ohio 44131-6808 |
| For Amicus Curiae<br>Ohio School Boards Association | Atty. Patrick J. Schmitz<br>Atty. Jenifer I. Stiff<br>Scott, Scriven & Wahoff, LLP<br>50 West Broad Street, Suite 2600<br>Columbus, Ohio 43215 |
| For Amicus Curiae<br>County Commissioners Association of<br>Ohio | Atty. Thomas A. Luebbers<br>Peck, Shaffer & Williams LLP<br>201 East Fifth Street<br>Suite 900<br>Cincinnati, Ohio 45202 |

[Cite as *Thernes v. United Local School Dist. Bd. of Edn.*, 2011-Ohio-6216.]
DONOFRIO, J.

### *Introduction*

**{¶1}** Plaintiff-appellant, Donald W. Thernes Jr., Superintendent of the Multi-County Juvenile Attention System District (MCJAS), appeals a Columbiana County Common Pleas Court decision granting summary judgment in favor of defendant-appellee, United Local School District Board of Education (United). MCJAS operates juvenile facilities for the training, treatment, and rehabilitation of juveniles placed there by the juvenile courts of six counties in northeast Ohio. The school district of a child who is placed in such a facility is required to pay "the cost of educating the child based on the per capita cost of the educational facility" within the juvenile facility. R.C. 2151.362(B). The question this case presents is whether that cost includes administrative costs incurred by the juvenile facility in providing those educational services.

### *Facts & Procedural History*

**{¶2}** MCJAS is a multi-county district that operates facilities for the training, treatment, and rehabilitation of juveniles placed there by the juvenile courts of six counties in northeast Ohio.[1] R.C. 2151.65. These counties are Carroll, Columbiana, Holmes, Stark, Tuscarawas, and Wayne. This case concerns one of MCJAS's Columbiana County facilities – the Louis Tobin Attention Center (Tobin Center). The center includes an educational space for its juvenile residents. United is a local school district board of education which serves elementary and secondary school students in Columbiana County.

**{¶3}** Under Ohio law, MCJAS is required to provide a "program of education" for juveniles admitted to its facilities. R.C. 2151.653. Each school district with a child admitted in one of MCJAS's facilities is statutorily required to pay the cost of the educational program MCJAS provides to the child. MCJAS is also statutorily authorized to change and/or supplement its relationship with one or all of the

---

1. Portions of the underlying facts and procedural history of this case are taken from a previous appeal decided by this court concerning this case in *State ex rel. Thernes v. United Local School Bd. Dist. of Edn.*, 7th Dist. No. 07 CO 45, 2008-Ohio-6922.

applicable schools by contract whereby a school would directly provide the teachers, rather than reimbursement thereof.

{¶4} Finding itself in need of an educational program for the youth admitted to the Tobin Center, MCJAS contracted with United in 1998 to provide those services. Under the year-to-year agreement, United was responsible for devising and providing an educational program for students housed at the center and for hiring, providing, paying, and supervising teaching and other staff for the educational program at the center. The contract also specifically provided that United was responsible for billing: "[United] shall assume the responsibility for billing outside school districts for the educational services provided. Such billing shall include a ten percent administrative cost." (01/08/1998 Agreement for Educational Services for the Multi-County Juvenile Attention System, section 8.) The contract did not further define the ten-percent administrative cost.

{¶5} The record indicates that the parties began to dispute cost issues during the 2004-2005 school year. As mentioned, United had a contractual duty to assume the center's billing responsibilities for other school districts within the center's domain. United alleged that it was unable to bill for its educational services, or for the 10% administrative cost, because the center would not release enrollment data for the other school districts.

{¶6} During the 2004-2005 school year, MCJAS proposed a new contract with section 8 changed to state, in pertinent part, the following: "The United Local District shall assume the responsibility for billing outside school districts for the educational services provided. Such billing shall include a 10% (of the cost of the Educational Program) administrative cost that will be paid to the Multi-County Juvenile Attention System." United stated that it was unable to enter the proposed contract.

{¶7} Rather than pursue a breach-of-contract action, MCJAS sued United on July 17, 2006, seeking a declaratory judgment that the per capita cost of providing the educational facility at the Tobin Center for youth-residents of the United Local

School District admitted to the center included overhead, administrative, and operational costs borne by MCJAS. In support, MCJAS relied solely on R.C. 2151.357 (recodified as R.C. 2151.362 effective October 9, 2006) which allocated the cost of educating a child who had been removed from their resident school district:

{¶8} "Whenever a child is placed in a detention facility established under section 2152.41 of the Revised Code or a juvenile facility established under section 2151.65 of the Revised Code, the child's school district as determined by the court or the department, in the same manner as prescribed in division (A) of this section, shall pay the cost of educating the child based on the per capita cost of the educational facility within the detention home or juvenile facility." R.C. 2151.357.

{¶9} United's answer denied the allegations in the complaint, and requested that the court dismiss the case, pursuant to Civ.R. 12(B)(6), for failure to state a claim upon which relief could be granted for want of a real controversy or justiciable issue which would be terminated by a declaratory judgment.

{¶10} On June 1, 2007, MCJAS notified United it was exercising its option to terminate their contract, effective at the end of the school year of 2008.

{¶11} Both parties produced documents regarding the costs involved in the educational program at the Tobin Center. United submitted that the expenses of the educational program were salaries for a teacher, a teacher's aide, a psychologist, educational supplies and educational equipment.

{¶12} MCJAS submitted that administrative cost of the Tobin Center's educational program included 10% of the salaries of the center's direct care day staff (including secretary, administrator, cooks, nurses, and youth leaders), 10% of the salary of the suicide intervention specialist, 1% of the salaries of the center's maintenance staff, 1% of the salaries of the center's administrative staff (including superintendent, director of detention, director of administrative support, administrative assistant, clerks, payroll, receptionist, and program analyst), 10% of the total operating expenses of the center (including office supplies, maintenance

supplies, general supplies, medical supplies, gasoline, data processing, building repair and services, licenses, property insurance, T-1 lines, and educational services), and 28% of the utility costs (including gas, electric, phones, and other utilities) based on the square footage of the educational facility within the center.

**{¶13}** Subsequent to interrogatories, motions to compel, discovery, and extensions of time, the trial court set a deadline of October 19, 2007 for motions for summary judgment. On October 17, 2007, MCJAS filed a motion for summary judgment, stressing that the action was not for breach of contract, and instead for a prospective construction of R.C. 2151.362 (formerly R.C. 2151.357). MCJAS's motion concluded by asking the court to direct United to include the center's expenses in the total cost of the educational program, including "the educational space, adjunct detention and/or treatment staff, and administrative support for the educational program." MCJAS also asked the court to direct United to bill the outside school districts for the per capita cost of said total amount and to pay MCJAS the money United receives.

**{¶14}** On October 19, 2007, United filed its own motion for summary judgment, indicating that the contract between the parties mooted the necessity and applicability of a judicial construction of R.C. 2151.362. United argued that there was no real controversy or justiciable issue between the parties which could be settled by the grant of a declaratory judgment.

**{¶15}** That same day, the trial court gave notice of assignment to United for responses to MCJAS's motion for summary judgment, with a deadline of December 21, 2007. On November 29, 2007, the trial court filed a judgment entry in favor of MCJAS. The trial court noted that the statute "seems pretty clear on its face that the home school district of the child is to pay the entire cost of educating the child at the detention facility. This would include the cost of any teachers, contract service, equipment facilities, administration, etc. In the instant situation this would be over and above the cost paid by the home district to the defendant for the teachers provided. The statue [sic] obviously contemplates educational facility at the

detention facility and leaves to the trustees or superintendent the manner of accomplishing staffing such educational facility."

{¶16} The trial court stated that there was a real controversy between the parties and that an interpretation of the statute was necessary for the parties to understand their current relationship and future obligations. The trial court then found that the matter was appropriate for declaratory judgment, and declared that R.C. 2151.362(B) "provides that the home district of a child placed in detention at the [MCJAS's] facility shall pay the entire cost of educating that child based on the per capita cost which would include educational personnel costs, administration personnel costs, costs of physical facilities including buildings, utilities, machinery, etc. This is left to [MCJAS] to determine what those costs are and to recoup those from the child's home district or is appropriate or can contract for."

### First Appeal

{¶17} On December 21, 2007, United filed a timely notice of appeal. While that appeal was pending, MCJAS and United negotiated a successor agreement to the 1998 agreement. This time, the parties more clearly defined the calculation of the cost for the education program:

{¶18} "When calculating the total amount to be invoiced to all school districts having children using the educational program, United Local will utilize the following formula to calculate the per capita cost of the Tobin educational facility for purposes of O.R.C. §2151.362: United Local's Annual Costs for the Educational Program + Ten Percent (10%) of United Local's Annual Costs to Represent Multi-County's Annual Costs of the Educational Program – Reimbursement to United Local from the State of Ohio (State Foundation Money) and Federal Title I-D funds = The amount to be billed by United Local to outside school districts ÷ School (Bed/Student Attendance at Tobin) Days = per capita cost of the Tobin Educational Facility" (07/31/2008 Agreement for Educational Services, section 5.)

{¶19} On December 17, 2008, this court affirmed in part and reversed in part the trial court's November 29, 2007 decision and remanded the case to the trial court

for "further consideration subsequent to [United] filing a response to [MCJAS's] motion for summary judgment." *State ex rel. Thernes v. United Local School Bd. Dist. of Edn.*, 7th Dist. No. 07 CO 45, 2008-Ohio-6922, at ¶49. This court held that MCJAS could seek declaratory judgment, but the trial court could not award summary judgment to MCJAS before the cutoff date for United to respond to MCJAS's summary judgment motion and before United in fact responded to the motion.

**{¶20}** On May 28, 2009, MCJAS filed its reply to United's motion for summary judgment asserting that the court should issue a declaratory judgment because: (1) R.C. 2151.362 applies to the parties to this action, and to school districts having children who utilize the Tobin Center educational facility; (2) R.C. 2151.362(A)(1) and 3313.64(C)(2) are applicable in determining which school district(s) are to bear the cost of the educational facility at the Tobin Center; (3) R.C. 2151.362(B) requires the school district of each child utilizing the Tobin Center educational facility to pay the cost of educating the child based on the per capita cost of said educational facility; and (4) that appellant incurs actual costs to provide and maintain the Tobin Center educational facility, and such costs shall be paid by the school districts having children in the Tobin Center who utilize its educational facility there.

**{¶21}** On June 1, 2009, United filed its memorandum in opposition to MCJAS's motion for summary judgment. United stressed that the court should deny MCJAS's requested declaratory judgment as brought in its motion for summary judgment. Moreover, it contended that to the extent the court issued any interpretation of R.C. 2151.362, such interpretation should narrowly construe R.C. 2151.362(B) so as to require that any costs assessed by MCJAS are reasonable, and are not an unlawful tax which MCJAS has no statutory right to impose on United or any other area school district.

**{¶22}** On September 18, 2009, the trial court reversed its prior decision. The trial court held that:

**{¶23}** "1.) §2151.362 applies to the parties of this action and to all school districts who have children in the Tobin Center. The Juvenile Court or Department of Youth Services determine which district must bear the costs.

**{¶24}** "2.) The school districts are to bear the costs of the educational facility on a per capita basis, meaning each school district pays a portion of the costs of running the educational facility at the Tobin Center based on how many children it has in that center.

**{¶25}** "3.) The Plaintiff-Relator [appellant] incurs actual costs to provide and maintain the educational facility. The Plaintiff-Relator is not entitled to reimbursement for costs that it would incur whether or not it had a physical education facility within its walls. For instance, Plaintiff-Relator is not entitled to include costs for cafeteria workers or cafeteria facilities, security, administrative staff, programming staff, counseling staff, or physical facilities that would be provided regardless of whether there was an educational facility physically located within its building.

**{¶26}** "On the other hand, if Plaintiff-Relator has to hire staff, create new facilities, or purchase new equipment solely for, or primarily to provide an educational facility, then it would be entitled to bill a cost of that expenditure prorated to the amount of use for education to the school districts as part of their per capita costs."

**{¶27}** Notably, the trial court observed that the educational services contract between the parties had expired. While that was reason enough for the court to opine that it would not venture to interpret that contract, the court noted that R.C. 2151.653 specifically contemplates a juvenile facility contracting for the educational services it is required to provide and, to that extent, the cost of such services is entirely a matter of contract outside the ambit of R.C. 2151.653.

### Second (Current) Appeal

**{¶28}** MCJAS filed a timely notice of appeal on October 5, 2009. The County Commissioners' Association of Ohio filed an amicus curiae brief on behalf of MCJAS. The Ohio School Boards Association filed an amicus curiae brief in support of United.

{¶29} MCJAS's sole assignment of error states:

{¶30} "THE TRIAL COURT'S INTERPRETATION OF R.C. 2151.362(B) IS ERRONEOUS AS A MATTER OF LAW."

### Standard of Review

{¶31} Because statutory construction or interpretation is an issue of law, a reviewing court examines the lower court's decision anew. *Ceccarelli v. Levin*, 127 Ohio St. 3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶8. This means reviewing the decision independently, without deference to the lower court's determination. *In re J.L.*, 176 Ohio App.3d 186, 2008-Ohio-1488, 891 N.E.2d 778, ¶33.

{¶32} R.C. 2151.362(B) provides:

{¶33} "Whenever a child is placed in a detention facility established under section 2152.41 of the Revised Code or a juvenile facility established under section 2151.65 of the Revised Code, the child's school district as determined by the court or the department, in the same manner as prescribed in division (A) of this section, shall pay the cost of educating the child based on the per capita cost of the educational facility within the detention home or juvenile facility."

{¶34} MCJAS argues that the language of the statute requires the school district to pay the cost of educating the child "based on the per capita cost" of the Tobin Center educational facility including, but not limited to, costs that are essential to the operation of any building, such as heat, electricity, water, maintenance and sewer, and insurance. He argues that the trial court, in its second decision, completely ignored the phrase "based on the per capita costs of the educational facility within the detention home of juvenile facility." Moreover, MCJAS contends that nowhere in this statute is there any language that would support the court's conclusion that MCJAS "is not entitled to reimbursement for costs that it would incur whether or not it had a physical education facility within its walls." (MCJAS's Brief at 11.)

{¶35} In response, United argues that R.C. 2151.362, like other cost and fee statutes, should be narrowly and reasonably construed. It points out that if the

General Assembly had intended for juvenile attention centers such as the Tobin Center to pass along the center's general facility costs such as security, cafeteria services, and other services unrelated to the educational program, the statute would have stated as such. However, United continues, the statute only permits appellant to seek reimbursement for the "cost of educating the child based upon the per capita cost of the *educational* facility," not the juvenile attention center facility as a whole. (Emphasis sic, United's Brief at 12.)

**{¶36}** MCJAS also argues that there is no language in the statute which would limit reimbursement "solely for, or primarily to provide an educational facility" at the Tobin Center. MCJAS continues by arguing that "the court's interpretation rewrites the statute to say: the child's school district…*shall pay the cost of educating the child based only on the direct costs of the educational facility*…within the [Tobin Center]." (Emphasis sic, MCJAS's Brief at 11).

**{¶37}** "The principles of statutory construction require courts to first look at the specific language contained in the statute, and, if the language is unambiguous, to then apply the clear meaning of the words used." *Roxane Laboratories, Inc. v. Tracy* (1996), 75 Ohio St. 3d 125, 127, 661 N.E.2d 1011. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

**{¶38}** Despite MCJAS's extensive efforts to make it so, the language of R.C. 2151.362(B) is not ambiguous. Reading the words and phrases of R.C. 2151.362(B) in context and construing them according to the rules of grammar and common usage, the cost of educating a child based on the per capita cost of the educational facility within a juvenile facility cannot be construed to include the administrative costs sought to be recovered by the facility.

**{¶39}** R.C. 2151.362(B)'s use of the word "within" is instructive. The phrases "of the educational facility" and "within the home or facility" make it clear that the school district will bear the cost of education within the facility. It does not position

the school district or cost bearer to pay for those costs outside the scope of educating the child (i.e., administrative costs).

**{¶40}** The reasoning behind the trial court's conclusion that the educational cost referred to in R.C. 2151.362(B) does not include MCJAS's administrative costs is sound. As the court aptly pointed out, the administrative costs MCJAS seeks to recoup through R.C. 2151.362(B) are costs it would bear whether or not the Tobin Center housed an educational facility. The court provided good examples of costs that the center would incur whether or not it had an educational facility, including costs of cafeteria workers or cafeteria facilities, security, administrative staff, programming staff, and counseling staff.

**{¶41}** Common usage of the language employed by R.C. 2151.362(B) also supports the trial court's conclusion that those costs that can be recouped from the child's school district are those costs solely or primarily for the educational facility. The best example of those costs is the costs MCJAS incurred in its contract with United to provide the educational services.

**{¶42}** In its supplemental appellate brief to this court, MCJAS also argues that the recent addition of subsection (C)(4) to R.C. 3313.64 supports it position. The Ohio Revised Code establishes who should pay the tuition of a student who does not reside in the district where his or her parents reside, a child who is in the permanent or legal custody of a government agency or person other than the child's parent. R.C. 3313.64. In that instance, "the total educational cost to be paid for the child shall be determined by a formula approved by the department of education, which formula shall be designed to calculate a per diem cost for the educational services provided to the child for each day the child is served and shall reflect the total actual cost incurred in providing those services. The department shall certify the total educational cost to be paid for the child to both the school district providing the educational services and, if different, the school district that is responsible to pay tuition for the child. The department shall deduct the certified amount from the state basic aid funds payable under Chapter 3317 of the Revised Code to the district

responsible to pay tuition and shall pay that amount to the district providing the educational services to the child." R.C. 3313.64(C)(4).

**{¶43}** In response to R.C. 3313.64(C)(4), the Ohio Department of Education developed Form SF-14PD for the educating district to complete in order to obtain reimbursement for its educational services provided to nonresident children. The form has line items for "administrative costs," "staff support cost," "pupil support costs," and "operations support cost."

**{¶44}** MCJAS's reliance on R.C. 3313.64(C)(4) is misplaced. R.C. 3313.64(C)(4) addresses the relationship between a child's residential school district and the school district presently providing educational services to the child housed at a juvenile facility. In particular, it addresses the financial obligation owed by the school district where the child resided before they were placed in the juvenile facility to the school district which is presently providing educational services to the child at the juvenile facility. In this case, MCJAS operates a juvenile facility; it is not a school district. R.C. 3313.64(C)(4) does not specifically address any financial obligations owed to it as the operator of a juvenile facility. Likewise, the "administrative costs," "staff support cost," "pupil support costs," and "operations support cost" referenced in Form SF-14PD are costs reimbursable to the educating school district, not the juvenile facility that houses the educational facility.

**{¶45}** In sum, the trial court's reading of R.C. 2151.362(B) was sound and well-reasoned. It employed the simple and clear meaning of the words used by R.C. 2151.362(B), reading the words and phrases in context and construing them according to the rules of grammar and common usage. Consequently, the trial court did not err in its award of summary judgment in favor of United.

**{¶46}** Accordingly, MCJAS's sole assignment of error is without merit.

**{¶47}** The judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.

DeGenaro, J., concurs.